## Griffin, Mayor, et. al. v. Powell,

(Decided April 21, 1911.)

## Appeal from Pulaski Circuit Court.

Cities — Classification — Legislative Acts — Evidence — Con-
clusiveness — There is no constitutional provision re-
quiring the Legislature, in transferring cities from one class to
another to have before it any census whether taken by the Fed-
eral government or the city authorities from which to ascertain
its population, though it may use either. The provision of sec-
tion 156 of the Constitution is that "in the absence of other sat-
isfactory information as to their population the Legislature shall
be governed by the last preceding federal census. The manner
of ascertaining the population is, therefore, a matter wholly in
the discretion of the Legislature, and, being required to act
upon evidence of some kind when it, by the necessary legisla-
tion makes the transfer, it will be presumed it was done upon
sufficient evidence and the legislative act will be conclusive.

T. Z. MORROW and W. B. MORROW for appellants.

WESLEY & BROWN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Appellee brought this action in the court below against
the appellant, City of Somerset, its mayor and council-
men, to prevent by injunction the city from being gov-
erned and its affairs conducted by the mayor and council-
men as provided by the statutes with respect to cities of
the third class; it being averred in the petition that ap-
pellants were assuming the right to so conduct the city
government under an act of the General Assembly ap-
proved March 16, 1910, by which it had been attempted
to place the city in the third class.

It was also averred in the petition that the act in
question is void, because in conflict with section 156 of
the Constitution which provides, that to entitle a city to
be assigned to the third class, it must have a population
of 8,000 or more; that the city of Somerset did not, when
designated by act of the legislature as a city of the
third class, have a population of 8,000; and that its popu-
lation as shown by the census of 1910, was only 4481 and
has never exceeded 4500.

The petition contained the further averment that to permit Somerset to be governed as a city of the third class would cause an increase of offices and officers, greatly enlarge the expenses of government, and make taxation more burdensome. For the reasons alleged appellee, as a property owner in, and voter and taxpayer of the city, brought the action to have the court determine whether Somerset had legally been made a city of the third class. The circuit court being of opinion that the act of the legislature under which the city of Somerset claims to have been made a city of the third class is unconstitutional, overruled the demurrer filed by appellants to the petition and granted the injunction asked by appellee. Appellants standing upon their demurrer excepted to the judgment entered in conformity to these rulings, and have appealed.

Section 156 of the Constitution, in so far as applicable to the present case, reads as follows:

"The General Assembly shall assign the cities and towns of the Commonwealth to the classes to which they respectively belong, and change assignments made as the population of said cities and towns may increase or decrease, and in the absence of other satisfactory information as to their population, shall be governed by the last preceding Federal census in so doing; but no city or town shall be transferred from one class to another except in pursuance of a law previously enacted and providing therefor."

The judgment is bottomed alone upon the supposed want of constitutional power in the legislature to assign the city of Somerset to the third class, because it did not in fact have the population necessary to entitle it to be made a city of that class. We do not concur in this conclusion. On the contrary it is our opinion that the legislature in designating Somerset a city of the third class by the act in question, must be regarded as having lawfully exercised the power conferred upon it by section 156 of the Constitution. In other words, in view of the provisions of the Constitution contained in the section, supra, the act of the legislature is conclusive and cannot be questioned by the courts. Manifestly, this is so; for whereas in a matter such as is here presented evidence is a condition precedent to the right of the legislature to act, it will be accepted without inquiry that it had before it the evidence authorizing it to act; and though it did not in fact have such evidence, it is not competent for the

courts to go behind the legislative action for the purpose of determining whether it had or had not the required evidence before it.

There is no constitutional provision requiring that the legislature in transferring a city from one class to another, shall have before it any census, whether taken by the Federal government or the city authorities, from which to ascertain its population, though it may use either. The provision of section 156 is that in the absence of other evidence the legislature shall resort to the last census taken previous to the enactment. The manner of ascertaining the population is, therefore, a matter wholly in the discretion of the legislature, and being required to act upon evidence of some kind in transferring a city from one class to another, when it by the necessary legislation makes the transfer, it will be presumed it was done upon sufficient evidence, and the legislative act will be conclusive.

An excellent statement of the law as to the conclusiveness of a legislative finding of a question of fact is to be found in Cooley's Constitutional Limitations (4th ed.) 225.

"From what examination has been given to this subject, it appears that whether a statute is constitutional or not is always a question of power; that is, a question whether the legislature in the particular case, in respect to the subject matter of the act, the manner in which its object is to be accomplished, and the mode of enacting it, has kept within the constitutional limits and observed the constitutional conditions. In any case in which this question is answered in the affirmative the courts are not at liberty to inquire into the proper exercise of the power. They must assume that legislative discretion has been properly exercised. If evidence was required it must be supposed that was before the legislature when the act was passed; and if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to such finding."

But further discussion of the question under consideration is unnecessary as it has been decided by this court in two cases. In the first of which, Green &c. v. Commonwealth, 95 Ky. 233, the facts seem to have been strikingly like those of the case at bar. By an act of the legislature, approved September 30, 1892, the cities of the State were classified as required by section 156 of the

Constitution. The act designated Pineville as a city of the fourth class and following the enactment, in June, 1893, of the statute providing a charter for cities of each class, the mayor and council of Pineville acting under the charter for cities of the fourth class were proceeding to adopt ordinances for administering the city government in conformity thereto, when an action in the name of the Commonwealth was brought against the mayor and councilmen, charging that the legislature in designating Pineville as a city of the fourth class had violated the provisions of section 156 of the Constitution, as the city did not have a population of 3,000 or more and less than 8,000, the number required to make of it a fourth class city under the Constitution; and that according to the census of 1890, which was the last one taken, its population was only 1,356.

Upon these facts an injunction was asked in that case, as in the one at bar, to restrain the mayor and council from imposing upon the people of Pineville what, it was alleged, would be an extravagant and illegal form of government; and further that the circuit court by proper judgment, make of Pineville a city of the sixth class. A demurrer interposed to the petition by the defendants was overruled and judgment entered granting the injunction restraining the mayor and council from continuing to govern Pineville as a fourth class city. The judgment also assigned the city to the sixth class and directed that it be so governed. On the appeal this court reversed the judgment; holding that where a city has been assigned by the legislature to a particular class, as provided by section 156 of the Constitution, it must remain in that class until changed by the legislature. Furthermore, that the courts have no power to transfer it to another class upon the ground that its population was not sufficient to entitle it to a place in the class to which it was assigned. The following excerpt from the opinion gives the conclusion reached by the court:

"The officers of the city have appealed, and the only question involved is whether the classification of the cities and towns of the Commonwealth shall be made by the courts, or made—as provided in the Constitution—by the General Assembly. To state the question is, of course, to answer it. The language of the Constitution is, * * * clearly, therefore, to the legislative department of the government, in pursuance of some law enacted for that purpose, must be left the right to change the assign-

ment of a city from one class to another if the unambiguous direction of the Constitution is to be observed. No argument or citation of authority can make this plainer than the Constitution makes it.''

In the second case referred to, Commonwealth v. Chinn &c., 97 Ky. 730, the question here involved was only incidentally decided. The case arose out of a rule taken by the county attorney against the county clerk and sheriff of Fayette County, requiring them to appear before the county judge and show cause why they should not name their several deputies, that the county judge might fix their salaries as provided by section 1776 Kentucky Statutes. The proceeding had in view the limiting of the salaries of the officers respectively as contemplated by section 1776, supra, which in counties having a population of over 40,000 and under 75,000 restricts the salaries of the officers to $3000 per annum, after paying their deputies and office expenses. To the rule a response was filed setting up affirmatively that the population of Fayette County was less than 40,000 and had never been that much. The reply filed to the response did not deny that the population was less than 40,000, but alleged that by virtue of section 138 of the Constitution ''each county having a city of 20,000 and a population including said city of 40,000, the same may be constituted a district'', meaning a judicial district, and that under this section the legislature had, in dividing the State into circuit court districts, made of Fayette County a separate district and established therein a court of continuous session, which was pleaded as conclusive of the question of population. A demurrer filed to the reply was sustained by the county court and the rule dismissed. The circuit court made the same ruling and upon appeal to this court the judgment was affirmed. It was, however, in substance held in the opinion, that as against the Commonwealth and as against the person for whose relief a statute is passed, the statute is evidence of the facts which it recites, but it is not evidence as against strangers; therefore, the statute which made a separate judicial district of Fayette County was conclusive of the county's having 40,000 population for the purpose of upholding that particular statute in so far as it made of Fayette County a separate district and established therein a court of continuous session, but not for the purpose of bringing the clerk and sheriff under the operation of section 1776 Kentucky Statutes, which restricts their salaries to $3000

per annum each, after paying their deputies and office expenses; for they held their several offices by reason of separate, independent, constitutional provisions, applicable alike to all counties of the State, without reference to population.

We do not find that the authorities relied on by appellee are in conflict with the cases, supra. In one of them, Jernigan v. City of Madisonville, 102 Ky. 313, it was simply held that sections 3661—3662, Kentucky Statutes, were unconstitutional, in so far as they authorized classification of cities by the courts, but said that so much of them as authorized the city to have a census of its population taken, was constitutional, and if taken, it might be used by the legislature as a basis for determin- ing the class to which the city should be assigned; but the opinion does not hold that the legislature must make such use of the census. The cases of Zimmerman v. Brooks and Carter County v. Brooks (decided together) 118 Ky. 85, upon which appellee also relies, can, we think, readily be distinguished from the instant case. They involved the validity of the act of the General Assembly creating a new county to be called the county of Beckham. It was declared unconstitutional because it violated section 63 of the Constitution which provides that no new county shall be created which will reduce the county or counties, or either of them, from which it shall be taken, to less area than 400 square miles; nor shall any county be formed of less area, or any boundary line thereof, pass within less than ten miles of any county seat of the county or counties divided; and also violated section 64 of the Constitution, providing that no new county shall be established of less than 12,000 inhabitants, or which shall reduce any county to less than 12,000 inhabitants.

In the opinion it was held that the courts can take judicial notice of the counties of the State and their boundaries as fixed by the statute; and also of the public sur- veys made by the State and published by its authorities. This principle made it permissible for the court, aside from the question of population, to determine from the facts before it whether the provisions of the Constitution as to area, boundaries and distances, had been violated by the act; but the court also had the right to determine upon the facts presented whether the act violated the provision of the Constitution as to population. In other words, as the provisions of the Constitution with respect to the creation by the legislature of new counties contain

no requirement that the legislature shall act upon evidence in establishing them, the courts are not required, as in a case of the legislature's assigning a city to a particular class, to presume that that body acted upon sufficient evidence, but may hear evidence and determine from it whether in establishing the county the legislative enactment violates the constitutional provisions, or any of them, as to area, boundary, distance or population. Moreover, under the doctrine announced in Commonwealth v. Chinn, &c., supra, Carter, Lewis and Elliott counties from which the county of Beckham was attempted to be created, were not estopped to show that insofar as the act affected them, it violated the Constitution.

Being of opinion that the act making the City of Somerset a city of the third class is not unconstitutional, the judgment is reversed and cause remanded with directions to the circuit court to sustain the demurrer to the petition and dissolve the injunction; and for further proceedings consistent with the opinion.