## Scott v. McCreary, Governor.

## Stout v. McCreary, Governor.

(Decided June 12, 1912.)

### Appeals from Franklin Circuit Court.

1. Judicial Districts—Creation of New Districts—Constitutional Provision.—Under section 138 of the Constitution the legislature cannot make a county a judicial district where it contains less than 40,000 inhabitants, or does not contain a city of 20,000.

2. Judicial Districts—Population—Question of.—Under that section the population is not determined from the last enumeration, but the question is what is the population in fact, and this is not simply a legislative question, and the court will not sustain the act if there is not in fact the required population.

JAMES GARNETT, Attorney General, CHAS. H. MORRIS, Assistant Attorney General and M. M. LOGAN for appellee.

T. L. EDELEN, H. S. BARKER, FIELD McLEOD and W. O. DAVIS for appellant Stout.

J. A. SCOTT, HAZELRIGG & HAZELRIGG and O'REAR & WILLIAMS for appellant Scott.

JAMES H. POLSGROVE, IRA JULIAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing in part and affirming in part:

The last General Assembly passed an act creating the 36th judicial district, and providing that the district should consist of the county of Franklin. So far as material, the act is in these words:

"That whereas, in order to give due regard to territory, business and population as required by section 128 of the Constitution, and

"Whereas, the criminal and civil docket of the Franklin Circuit Court, including the State fiscal business, involving large sums and a great amount of litigation of vast importance to the State, renders it impractical for the circuit judge of the fourteenth judicial district to dispose of the same without unreasonable delay and accumulation of costs, therefore,

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Par. 1. That the thirty-sixth judicial district shall consist of the county of Franklin.    *    *    *

"The Governor shall appoint a circuit judge for said thirty-sixth judicial district to serve until the next regular election occurring not less than three months thereafter, when said office shall be filled by election."

This suit was brought to contest the validity of the act. R. L. Stout, the circuit judge of the fourteenth judicial district, which embraced the county of Franklin, filed his petition in the action alleging that he was a resident of the county of Franklin, and so entitled to hold the office of judge of the thirty-sixth judicial district. On the hearing of the action, the circuit court held the act valid, and dismissed Judge Stout's petition. From this judgment, the appeals before us are prosecuted.

Sections 128, 132, 134 and 138 of the Constitution are as follows:

"At its first session after the adoption of this Constitution, the General Assembly, having due regard to territory, business and population, shall divide the State into a sufficient number of judicial districts to carry into effect the provisions of this Constitution concerning circuit courts. In making such apportionment, no county shall be divivided, and the number of said districts, excluding those in counties having a population of one hundred and fifty thousand, shall not exceed one district for each sixty thousand of the population of the entire State." (Sec. 128.)

"The General Assembly, when deemed necessary, may establish additional districts; but the whole number of districts, exclusive of counties having a population of one hundred and fifty thousand, shall not exceed at any time one for every sixty thousand of population of the State according to the last enumeration." (Sec. 132.)

"The judicial districts of the State shall not be changed except at the first session after an enumeration, unless upon the establishment of a new district." (Sec. 134.)

"Each county having a city of twenty thousand inhabitants, and a population, including said city, of forty thousand or more, may constitute a district, and when its population reaches seventy-five thousand, the General Assembly may provide that it shall have an additional judge; and such district may have a judge for each additional fifty thousand population above

one hundred thousand. And in such counties the General Assembly shall, by proper laws, direct in what manner the court shall be held and the business therein conducted." (Sec. 138.)

It will be observed that by section 128, the General Assembly, having due regard to territory, business and population, must divide the State into a sufficient number of judicial districts to carry into effect the provisions of the constitution; that in making such apportionment no county shall be divided, and the number of districts, excluding those in counties having a population of 150,-000, shall not exceed one district for each 60,000 of the population of the entire State. By section 132, the General Assembly, when deemed necessary, may establish additional districts, but the whole number of districts, exclusive of counties having a population of 150,000, shall not exceed one for every 60,000 of population of the State, according to the last enumeration. By section 134, the judicial districts of the State shall not be changed, except at the first session after an enumeration, unless upon the establishment of a new district. And by section 138, each county having a city of 20,000 inhabitants, and a population, including the city, of 40,000 or more, may constitute a district. Franklin County, by the last enumeration, had a population of 21,135, and it had in it the city of Frankfort, which, by that enumeration, had a population of 10,465. It will be observed that section 132, limiting the number of districts, which the General Assembly may create, bases it upon the population of the State according to the last enumeration, and this limitation is also referred to in section 134, but no such limitation is contained in section 138. A county having a city of 20,000 inhabitants and a population, including the city, of 40,000 or more, in fact, may constitute a district, although its population, according to the last enumeration, may be less than this. In the case before us, it is averred in the petition that the population of the county is less than 40,000, and that it contains no city of 20,000 inhabitants, and these allegations are admitted by the demurrer to be true; but, it is insisted that, notwithstanding this, the act is valid. Several reasons have been assigned to sustain this view.

One reason assigned is that the word "may" in section 138 should be read as "must," and that the section means that where a county has a city of 20,000 inhabitants and a population, including the city, of 40,000 or

more, it must constitute a district. We are referred to a number of cases in which statutes containing the word "may" have been construed as though the word "must" was used, where duties were imposed affecting the rights of the public, but we have not been referred to any case where this rule of construction has been applied to a State Constitution. The words of a State Constitution are usually selected with great care, and so solemn an instrument should be read as written, unless upon the clearest evidence that the makers of the instrument intended otherwise. We see nothing in the provisions of the Constitution quoted, to justify such a construction here. The Legislature is required to have due regard to territory, business and population in dividing the State into circuit court districts. They are to consider the business, no less than the territory and population, and it cannot reasonably be inferred that the framers of the Constitution contemplated that the Legislature should not take into consideration the amount of business, in a county containing a city having 20,000 inhabitants and a population, including the city, of 40,000 or more.

Another reason assigned, is this: It is said that there are a number of counties in the State, having no city of 20,000 inhabitants, but having a rapidly increasing population which will soon be more than 40,000, and where there are several towns in a county, and its population and business require a court of continuous session, the Legislature has the power to make such county a district under section 128, and that section 138 should be construed so as to permit a county having a city of 20,-000 and a population, including the city, of 40,000 or more, to be made a separate district, regardless of the business done there; but we cannot believe that the makers of the Constitution, who were practical men, had any such distinction in mind. They were providing for the dispatch of the judicial business of the State, and they did not intend to permit the Legislature in creating judicial districts to lose sight of the necessities of business. Giving section 138 this construction would, in our opinion, be practically to eliminate it from the Constitution; for, it would have, under such a construction, no practical meaning or effect. The other sections would have expressed this meaning if section 138 had been omitted from the instrument.

When the makers of the Constitution provided that

a county, under certain conditions, may constitute a district, they, by necessary implication, provided that a county may not constitute a district unless these conditions exist. A state constitution is to be construed in the natural sense of the terms used, for it has been adopted by the people and derives its entire force from that fact. The people who adopted it could only judge of its provisions by reading it, and when the sections of the Constitution above quoted are read together, we do not see how the conclusion can be escaped that section 138 is a limitation upon the power of the General Assembly, authorizing it to constitute a single county a district in a certain contingency, and restraining it from doing this under other circumstances. By section 116 of the Constitution, it is provided that the Legislature may, every ten years after the first apportionment, redistrict the State into appellate court districts, and in Clark v. Lester, 104 Ky., 191, it was held that the Legislature could not change the districts within ten years. We do not see how that case can be distinguished from the one before us. A state Constitution is not a grant of legislative powers. The Legislature has all power, unless restricted by the Constitution. And, when a State Constitution provides that a Legislature may do certain things in a certain contingency, it must mean that it cannot do these things otherwise.

Lastly, it is insisted that it must be presumed that the Legislature found as a fact that he county of Franklin had a city of 20,000 inhabitants and a population, including the city, of 40,000 or more, and that this legislative finding is conclusive upon the court. But, it will be observed from the preamble of the act that the Legislature made no such finding. Waiving this, and conceding that the passage of the act is a finding by the General Assembly of all the facts necessary to its passage, we are of opinion that the validity of the act depends upon the fact of population, and not upon the finding of the General Assembly as to it. By section 63 of the Constitution, the Legislature is forbidden to create a new county, unless under certain conditions. In Zimmerman v. Brooks, 118 Ky., 85, we had before us the validity of a legislative act creating a county, and it was insisted that the legislative finding as to the facts was conclusive upon the court. Rejecting this contention, we said:

"Constitutional guaranties would amount to nothing

if there was no way to protect them. The court will not adjudge bad a legislative act on doubtful evidence, but, where it is plain that the Constitution has been violated, it is the duty of the court to say what the law is, and protect private rights, otherwise, the Constitution may be disregarded, and power may be exercised by the Legislature in a case where, under the Constitution, it is without power to act at all, and those whose rights are thus destroyed will be left without remedy."

In the subsequent case of Griffin v. Powell, 143 Ky., 276, we held that the Legislature, under the Constitution, must assign the cities of the State to the classes to which they belong and that the legislative finding as to population, in assigning cities to the different classes, was conclusive on the court, but that ruling is based upon the language of section 156 of the Constitution, which is materially different from section 138. In that case Zimmerman v. Brooks was approved, but distinguished from the case then before the court. Referring to that case, the court said:

"In the opinion it was held that the courts can take judicial notice of the counties of the State and their boundaries as fixed by the statute; and also of the public surveys made by the State and published by its authorities. This principle made it permissible for the court, aside from the question of population, to determine from the facts before it whether the provisions of the Constitution as to area, boundaries and distances, had been violated by the act; but the court also had the right to determine upon the facts presented whether the act violated the provision of the Constitution as to population. In other words, as the provisions of the Constitution with respect to the creation by the Legislature of new counties contain no requirement that the Legislature shall act upon evidence in establishing them, the courts are not required, as in a case of the Legislature's assigning a city to a particular class, to presume that that body acted upon sufficient evidence, but may hear evidence and determine from it whether in establishing the county the legislative enactment violates the constitutional provisions, or any of them as to area, boundary, distance or population."

The case of Commonwealth v. Chinn, 97 Ky., 730, which is also relied on here, was in like manner distinguished in that case.

The census of 1910 was taken only about two years ago. The county of Franklin, including the city of Frankfort, had then only a population of 21,135, and that census did not show any great increase of population in the last ten years. There has been no remarkable growth in the population since that census was taken, and it is admitted by the demurrer that the county has not a population of 40,000, or a city of 20,000 inhabitants. When the Legislature comes to act under section 138, it should not create a district of a single county, unless it has evidence that the population is sufficient to fill the constitutional requirement, but, though it may have this evidence, still, if the fact does not exist, the court will inquire into the fact and will not sustain the act, if in violation of the Constitution. True, great weight will be given to the legislative finding where the facts are doubtful, and the legislative finding will not be disturbed upon doubtful evidence; but, where the facts are clear, the court must do its duty and maintain the supremacy of the Constitution. Were the rule otherwise, constitutional limitations would be valueless. We, therefore, conclude that the act is invalid, and that the circuit court erred in sustaining the demurrer to the petition.

This disposes also of the other branch of the case arising on the appeal of Judge Stout. In the case of McCreary, Governor v. Fields, decided June 6, 1912, we also settled the question of law raised by him adversely to his views.

On the appeal of James Andrew Scott the judgment is reversed and cause remanded for further proceedings consistent herewith. On the appeal of R. L. Stout the judgment is affirmed.

Whole court sitting.

Judges Lassing and Winn dissent.

DISSENTING OPINION BY JUDGE WINN.

I dissent from the opinion herein.

The General Assembly of the Commonwealth of Kentucky, at its regular session in 1912, enacted a statute creating the 36th circuit judicial district, providing that it should consist of the county of Franklin alone. James Andrew Scott, a citizen, resident and taxpayer of the county of Franklin, conceiving that the act was in conflict with and forbidden by certain provisions of that fundamental ground work of the laws and institutions of

our Commonwealth, its Constitution, instituted in the
Franklin Circuit Court an action seeking an injunction
against the Governor of the Commonwealth to prohibit
him from appointing a judge of the circuit court in
Franklin county, a power given to and devolving upon
the Governor by the express terms of the act in question.
The Governor of the Commonwealth, the appellee here,
interposed a demurrer to the petition; and upon con-
sideration thereof the demurrer was sustained, the pe-
tition dismissed, and the plaintiff appeals here. While
the action was brought in nature to restrain the Govern-
or from appointing a circuit judge in the district, the
true issue and effort of the action was to determine
whether or not in the creation of a separate circuit ju-
dicial district of Franklin County the Legislature had
violated any section of the Constitution or had exercised
any power not delegated to or inherent in it. The case
has been ably argued and ably discussed in briefs by the
Attorney General, representing the tax paying people of
the Commonwealth in opposition to the legality of the
legislation in question, and by counsel represening the
Governor, the executive discharging the legislative will,
seeking to uphold the legislation. In my judgment the
discussion has assumed a latitude much broader than is
demanded by the somewhat narrow, yet plain, constitu-
tional interpretation which seems to me to be inescapable
and decisive of the case.

The provisions of the Constitution of the State in-
volved directly or indirectly in the determination of the
question before us are as follows:

"Section 128. At its first session after the adoption of
this Constitution, the General Assembly, having due
regard to territory, business and population, shall divide
the State into a sufficient number of judicial districts to
carry into effect the provisions of this Constitution con-
cerning circuit courts. In making such apportionment,
no county shall be divided, and the number of said dis-
tricts, excluding those in counties having a population of
one hundred and fifty thousand, shall not exceed one dis-
trict for each sixty thousand of the population of the
entire State.

"Sec. 129. The General Assembly shall, at the same
time the judicial districts are laid off, direct elections to
be held in each district to elect a judge therein. The
first election of judges of the circuit courts under this

Constitution shall take place at the annual election in the year eighteen hundred and ninety-two, and the judges then elected shall enter upon the discharge of the duties of their respective offices on the first Monday in January after their election, and hold their offices five years and until their successors are elected and qualified. At the general election in eighteen hundred and ninety-seven, and every six years thereafter, there shall be an election for judges of the circuit courts, who shall hold their offices for six years from the first Monday in January succeeding their election. They shall be commissioned by the Governor, and continue in office until their successors shall have been qualified, but shall be removable in the same manner as the judges of the Court of Appeals. The removal of a judge from his district shall vacate his office.

"Sec. 130. No person shall be eligible as judge of the circuit court who is less than thirty-five years of age when elected, who is not a citizen of Kentucky, and resident of the district in which he may be a candidate two years next preceding his election, and who has not been a practicing lawyer eight years.

"Sec. 131. There shall be at least three regular terms of circuit court held in each county every year.

"Sec. 132. The General Assembly, when deemed necessary may establish additional districts; but the whole number of districts, exclusive of counties having a population of one hundred and fifty thousand, shall not exceed. at any time one for every sixty thousand of population of the State according to the last enumeration.

"Sec. 133. The judges of the circuit court shall, at stated times, receive for their services an adequate compensation to be fixed by law, which shall be equal and uniform throughout the State, so far as the same shall be paid out of the State Treasury.

"Sec. 134. The Judicial Districts of the State shall not be changed except at the first session after an enumeration, unless upon the establishment of a new district.

"Sec. 135. No courts, save those provided for in this Constitution, shall be established.

"Sec. 136. The General Assembly shall provide by law for holding circuit courts when, from any cause, the judge shall fail to attend, or, if in attendance, cannot properly preside.

"Sec. 137. Each county having a population of one hundred and fifty thousand or over, shall constitute a district, which shall be entitled to four judges. Additional judges for said districts may, from time to time, be authorized by the General Assembly, but not to exceed one judge for each increase of forty thousand of population in said county, to be ascertained by the last enumeration. Each of the judges in such a district shall hold a separate court, except when a general term may be held for the purpose of making rules of court, or as may be required by law: Provided, no general term shall have power to review any order, decision or proceeding of any branch of the court in said district made in separate term. There shall be one clerk for such district, who shall be known as the clerk of the circuit court. Criminal cases shall be under the exclusive jurisdiction of some one branch of said court, and all other litigation in said district, of which the circuit court may have jurisdiction, shall be distributed as equally as may be between the other branches thereof, in accordance with the rules of the court made in general terms or as may be prescribed by law.

"Sec. 138. Each county having a city of twenty thousand inhabitants, and a population including said city of forty thousand or more, may constitute a district, and when its population reaches seventy-five thousand, the General Assembly may provide that it shall have an additional judge, and such district may have a judge for each additional fifty thousand population above one hundred thousand. And in such counties the General Assembly shall, by proper laws, direct in what manner the court shall be held and the business therein conducted."

As will be seen as a matter of first impression the provision as to counties in the State which may have a population of as much as one hundred and fifty thousand individuals, is not involved in this litigation save only in so far as it may shed light upon the question here. The first provision of the Constitution to be noticed is that portion of section 128, which provides that the Legislature shall not have the power to create districts (outside of counties having a population of one hundred and fifty thousand) exceeding in number one district for each sixty thousand of the population of the entire State. It is not complained in the case at bar that the creation of the additional district of Franklin County causes the

entire number of districts to exceed one for each sixty thousand of the State's population.

If we next read all the above sections of the Constitution down to section 138 it is clear that there is no prohibition against legislation by the General Assembly erecting any single county into a separate circuit judicial district. The only prohibition as to any single county is that no county shall be divided into separate districts. Beyond this prohibition the Legislature was left to exercise its entire freedom of will and judgment in the creation of districts, subject alone to the demand that the General Assembly should have due regard to territory, business and population, and subject to the provision of section 132, supra, that additional circuit judicial districts might be established when deemed necessary by the General Assembly. In other words (excluding always counties having a population of one hundred and fifty thousand), the Legislature was given carte blanche to establish as many circuit court districts as it might deem necessary, in the exercise of a due regard to territory, business and population, so long as it did not so far extend the exercise of this judgment as to create more districts than one for each sixty thousand of the State's population. In the enactment of so enduring, dignified and formal a document as that of a Constitution, the basic law of a self-governing people, it is not to be assumed that any words written into the instrument were there written lightly or without some definite and precise purpose. The words in section 128, "having due regard to territory, business and population" and the words in section 132, "when deemed necessary," which latter words of necessity refer back to the standard or measure to be regarded by the Legislature in the creation of new districts, must be given the formal weight which all words in a Constitution are entitled to receive. The standard erected and declared in these words is the standard which the Legislature must needs follow, and is the standard which must govern us unless there be within the Constitution itself some other declared standard limiting or narrowing the intent of these words.

This brings us to section 138, upon which the plaintiff grounds his cause of action in the case at bar and upon which the majority opinion exclusively rests. We quote again that section:

"Each county having a city of twenty thousand in-

habitants, and a population including said city of forty thousand or more, may constitute a district, and when its population reaches seventy-five thousand, the General Assembly may provide that it shall have an additional judge, and such district may have a judge for each additional fifty thousand population above one hundred thousand. And in such counties the General Assembly shall, by proper laws, direct in what manner the court shall be held and the business therein conducted."

At least three distinct views are argued in the case at bar as the intent of this section. One is that the use of the word "may" is permissive; another is that the use of the word "may" is imperative, and that its true sense is "must;" while yet the third is founded upon the maxim "Expressio unius, exclusio alterius" arguing that when the framers of the Constitution said that a county having a city of twenty thousand inhabitants, and a population including said city, of forty thousand, might constitute a district, they meant to exclude all other counties singly from becoming districts unless they met this requirement of population, both as to city and as to county. The plaintiff's petition alleged, and upon demurrer the allegation stood confessed, that Franklin County had not forty thousand population, nor within it a city of twenty thousand population.

There is nothing in the language of the section named from which justly and fairly can be deduced any implied purpose of the framers of the Constitution of a negation or denial of the right of the General Assembly to create into separate districts counties which have less than forty thousand population, or which have not in them cities having twenty thousand population. If this provision of the Constitution stood alone there would be much in the argument that in thus setting up a standard the Constitution makers had meant to make it, not only a permissive or mandatory, but as well an exclusive, standard; but such is not the condition presented. Section 138 of the Constitution must be considered in connection with the other sections preceding it. The other sections, as above pointed out, provide that the General Assembly, in the creation of districts, should have due regard to territory, business and population, and that it might create new districts when deemed necessary, subject alone to the prohibition against the division of any county, and the other provision that the total num-

ber of districts should not exceed one for each sixty thousand of the State's population. The spirit or intent of the Constitution makers should be gained, therefore, not from section 138 alone, but from all the provisions of the sundry sections quoted. The true meaning seems to me not difficult of ascertainment; and that intent, in so far as the present action is concerned, need not involve the ascertainment of whether the word "may" in section 138 is permissive or mandatory. Section 138 means neither more nor less than that a county having forty thousand of population, and a city within it of twenty thousand of population, may or must (depending upon which should be the proper intent of that section) constitute a separate district, without the "due regard to territory, business and population" demanded to be exercised by the General Assembly in the creation of districts generally. In other words, section 128 of the Constitution denied to the General Assembly in the exercise under their oaths of this legislative governmental function entrusted to them, the right to create new districts generally, unless the legislators should first investigate or in some manner satisfy themselves that a due regard to the territory, business and population of the proposed new district justified the erection of such a district. But the Constitution, in section 138, went somewhat further. It gave to the General Assembly the right, or imposed the duty (the one way or the other as its language may be read) to constitute a district of any county of forty thousand of population, with a city of the requisite size within its borders, without any regard whatever to the territory and quantity of legal business within such county. By section 128 the Legislature, in the general creation of districts, was required to have regard to territory and business. This discretionary standard was set as the guide to the General Assembly in its general creation of districts; but an entirely different and arbitrary standard was fixed as to counties having a population of forty thousand, with cities within them of twenty thousand. In other words, the Constitution itself fixed such a standard for counties meeting this requirement and did not exact of the Legislature to exercise any regard to territory or business in such counties before one of them might alone constitute a district. The makers of the Constitution, practical men in the exercise of sound good sense, took it upon themselves to say that in counties of the character described

in section 138 a circuit court might exist upon the natural premise that its business would of necessity justify it; but it did not take away from the General Assembly the general power and the general right to constitute any other single county, having due regard to territory, business and population, into a separate district, so long as the total number of districts did not exceed one for each sixty thousand of population. This construction of the Constitution's intent makes the whole of it upon the subject of circuit districts harmonious. It leaves to the General Assembly the right to create a district of a single county when, with due regard to its territory and business, it might deem the creation of the district proper, necessary or beneficent to the expedition of the litigation of the people of the Commonwealth. It is not charged that the business of Franklin County does not justify the erection of it into a separate judicial district, and that the act of the General Assembly creating it was arbitrary or without regard to the territory or the business of the county. Indeed, when it is considered that the entire fiscal business of the State and its matters of public litigation are conducted through the circuit court of Franklin county it is difficult to conceive that any such position could have been sustained.

In the discussion of this case it has not seemed necessary for me to go into any elaborate treatment of the sundry arguments and authorities ably presented by the lawyers who have argued and briefed the case. The intent and meaning of the Constitution seems to me to be clear from the document itself. When the document makes the meaning clear it is unnecessary to search extraneous authority for the intent. The general rule, where the constitutionality of legislation is to be ascertained by the courts, is that any reasonable doubt must be resolved in favor of the legislative action, and the act sustained. And where it is not clear that the Constitution has been invaded the courts will rarely, if ever, interfere to arrest the operation of legislative enactments. A court must start with the fundamental principle that the statute is constitutional; and it is not permitted by any decree of ours to nullify a statute unless it is clearly against the Constitution. Under the views I have expressed the legislation in question, upon the record presented here, not only does not run contrary to any prohibition of the Constitution, but is in full accord with a

right delegated in express terms to the General Assembly.

The court's opinion disposes of the position I have taken by remarking that the framers of the Constitution were practical men; that it could not reasonably be inferred that they contemplated that under section 138 the Legislature would have the right to erect a single county of forty thousand souls with a city of twenty thousand within it, into a circuit district, without regard to whether the business justified it; that these same practical men did not intend to permit the Legislature to lose sight of the necessities of business; and that such a construction would leave the section meaningless and eliminate it from the Constitution. Let us see. These same men, the Constitution makers, did provide under section 137 that a county with a population of one hundred and fifty thousand should have four judges, an arbitrary standard without any regard to the necessities of business in such counties. This would permit a judge for each thirty-seven thousand five hundred of population, without regard to business—a fixed and definite standard set up by these same men. Wherein, then, is it unreasonable to say, or in derogation of the practicality of the minds of these men to say, that they have provided a like arbitrary, fixed and definite standard for counties of forty thousand people, a judge to forty thousand, without regard to business?

Recurring again to this subject of business, which, according to the court's opinion, had always to be considered; how far should the necessities of business be considered? Under the court's opinion a county which might have a hundred thousand of population, and a business of prodigious proportions could not constitute a separate district unless it had within it a city of twenty thousand. The county of Pike, for instance, under the enumeration of 1910, had a population of 31,679, a population which in all probability will have increased to 50,000 by 1920. It has in it no town of as much as 3,000 population. The nature of its development, a widespread coal-mining industry, naturally locates its citizens over the entire area of the county; and it is improbable that there will be a city of twenty thousand people in the county for many years to come. And yet, no matter how much the legal business from the titular troubles prevalent in that section of our State, mining accidents, and

the various commercial transactions of an awakening and industrious new era, it can never have a court of and within itself, under the Constitution as interpreted by the majority opinion. Nay, is it not more reasonable to say that the Constitution makers were practical enough to see just such a possibility, and, therefore, by section 128 left it to our General Assembly to create a district of a single county whenever a due regard to its business should justify it? To portray the extremity to which the opinion leads us, let us trace this Pike County illustration somewhat further. Under the facts as I have pictured them the court says that the Legislature could not erect a district of Pike County; but the same General Assembly could divide Pike county into two counties, possessing precisely the same business, precisely the same population, and precisely the same area, and with due regard to these conditions make a district of the two counties. The courts of the two counties, maintained at a largely increased burthen to the taxpayers, would be constitutional courts, while according to the majority opinion, the circuit court of the single county as a district would not be a constitutional court. The members of the constitutional convention did not, in my judgment, mean to make possible any such a condition. And whatever they may be held to have meant to say, it is certain that they did not anywhere say that a single county should never constitute a district unless it had a population of forty thousand, inclusive of a city of twenty thousand within it. What they did say was that such a county might constitute a district without regard to its business, just as they said that a county of one hundred and fifty thousand should have four judges without regard to its business. As said in the court's opinion, "the Legislature has all power unless restricted by the Constitution." When added to this general power I find in section 128 an express grant of power to them to exercise their general legislative will in the creation of districts under the conditions imposed in that section, I am unwilling to read into section 138 a lopping-off of that power which the framers of the Constitution did not put there.

I dissent with great reluctance from the view of the able and experienced majority; but it seems to me to be a clear duty. The majority opinion destroys the deliberate act of a co-ordinate branch of the government, done,

in my judgment, in the exercise of a power expressly accorded to the General Assembly by our Constitution. Judge Lassing concurs with me.