## Willis v. Jonson.

(Decided June 24, 1938.)

540

S. Y. TRIMBLE and SELDEN Y. TRIMBLE, IV, for appellant.

JOHN B. RODES, N. F. HARPER, HUBERT MEREDITH, Attorney General, and J. K. LEWIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE STITES—Reversing.

The question involved on this appeal is the validity of an Act passed at the 1938 Regular Session of the General Assembly of Kentucky, undertaking to create a new judicial district composed of the counties of Muhlenberg, Ohio, Butler and Edmonson, and to be known as the Thirty-Eighth Judicial District. Acts 1938, c. 13, section 10. The four counties named were part of the Sixth, Seventh and Eighth Judicial Districts, which, up to the present time, according to the allegations of the petition, have remained unchanged from their creation at the first session of the General Assembly held after the adoption of the present Constitution—a period

of more than forty-five years. This suit was brought by the Judge of the Seventh Judicial District to enjoin the appellee, who is the judge of the new Thirty-Eighth District appointed pursuant to the Act of 1938, from assuming or undertaking to discharge any of the duties pertaining to the office of Judge of the Muhlenberg Circuit Court. No question is here made of the form of the action or of the capacity of appellant to bring the suit. A petition and amended petition were filed in the circuit court, and appellee demurred thereto. A special judge was appointed to hear the suit, and he sustained the demurrer to the petition as amended. Appellant declined to plead further, and his petition was dismissed and this appeal followed.

Sections 128 and 132 of the State Constitution provide:

(Section 128) "At its first session after the adoption of this Constitution, the general assembly, having due regard to territory, business and population, shall divide the state into a sufficient number of judicial districts to carry into effect the provisions of this Constitution concerning circuit courts. In making such apportionment no county shall be divided, and the number of said districts, excluding those in counties having a population of one hundred and fifty thousand, shall not exceed one district for each sixty thousand of the population of the entire state."

(Section 132) "The general assembly, when deemed necessary, may establish additional districts; but the whole number of districts, exclusive of counties having a population of one hundred and fifty thousand, shall not exceed at any time one for every sixty thousand of population of the state according to the last enumeration."

It will be observed that Section 128 considered alone apparently relates only to the first districting of the State following the adoption of the Constitution, and that Section 132, relating to the establishment of additional districts, does not carry forward the provision that the General Assembly shall have "due regard to territory, business and population," but does repeat in substance the last provisions in requiring that "the whole number of districts, exclusive of counties having a population of one hundred and fifty thousand, shall

not exceed at any time one for every sixty thousand of population of the state according to the last enumeration." It is argued by appellee from this premise that Section 128 of the Constitution was intended to relate only to the first apportionment of the State into districts and that thereafter the Legislature was free to create new districts whenever it "deemed necessary" without regard to territory, business or population. The logic of this argument is forceful. Its fallacy, however, may be demonstrated by apagogic reasoning. It will be observed that a conclusion to this effect would eliminate all restrictions upon the power of the Legislature to create additional districts, or, indeed, to redistrict the entire State in any way it might see fit at the first session following any Federal enumeration (Section 134). It is only under Section 128 that there is a prohibition against dividing a county, and yet it could hardly be contended that the framers of the Constitution ever intended that the Legislature would be permitted to divide one county between two or more districts. It is conceded in briefs for amicus curiæ, adopted by appellee, that a county can not constitutionally be divided, yet it is only in Section 128 that the inhibition exists. In Brown v. Moss, 126 Ky. 833, 105 S. W. 139, 31 Ky. Law Rep. 1288, it was said that Section 128 "throws a strong cross-light on the construction to be given section 132." In Scott v. McCreary, 148 Ky. 791, 147 S. W. 903, Section 128 was again read in connection with the other sections relating to the establishment of judicial districts; and again in Nolan v. Jones, 215 Ky. 238, 284 S. W. 1054, the sections were read together, and the Court, after referring to Scott v. McCreary, supra, said that "this court now, after another thorough investigation and thoughtful consideration of the questions involved, unreservedly adheres to the opinion of the court in that case." We conclude, therefore, both on reason and on the authority of the previous decisions of this Court, that section 128 is not limited alone to the first apportionment of the State into judicial districts, but that it is still operative, and the Legislature, in creating additional districts, must have "due regard to territory, business and population."

Appellee insists, however, that, even though we should conclude that Section 128 is still alive, nevertheless the determination of the facts regarding territory, business and population is strictly a legislative or politi-

cal right. He asserts that the courts will not and cannot re-examine the primary facts claimed to have been found to exist by the Legislature as a basis for its action. Undoubtedly, where facts do exist tending to authorize legislative action, which, under the Constitution, can be taken only upon certain contingencies, the courts will not substitute their judgment for that of the Legislature or undertake to exercise a discretion which is legislative and not judicial. Where, however, the Constitution limits the right of the Legislature to act to certain factual situations only, it is the duty of the courts, in the protection of constitutional guaranties, to determine the existence or non-existence of the facts authorizing legislative action. In other words, the Legislature cannot lift itself by its own bootstraps in violation of the Constitution by a mere process of finding purported facts which do not exist and then act upon the authority of such finding. In Scott v. McCreary, supra, an attempt was made to create a separate judicial district of Franklin County in the face of Section 138 of the Constitution limiting the right to create a district of one county to those counties having a city of 20,000 inhabitants. In the preamble to the bill it was recited that it was impractical to dispose of the large amount of business in the Franklin Circuit Court, and it was contended that the courts should presume that the Legislature had found facts as to the population of the City of Frankfort and Franklin County necessary to authorize legislative action under Section 138 of the Constitution. However, it was said:

"* * * conceding that the passage of the act is a finding of the General Assembly of all the facts necessary to its passage, we are of opinion that the validity of the act depends upon the fact of population, and not upon the finding of the General Assembly as to it. By section 63 of the Constitution, the Legislature is forbidden to create a new county, unless under certain conditions. In Zimmerman v. Brooks, 118 Ky. 85, 80 S. W. 443, 25 Ky. Law Rep. 2284, we had before us the validity of a legislative act creating a county, and it was insisted that the legislative finding as to the facts was conclusive upon the court. Rejecting this contention, we said:

" 'Constitutional guaranties would amount to nothing, if there was no way to protect them. The

court will not adjudge bad a legislative act on doubtful evidence, but, where it is plain that the Constitution has been violated, it is the duty of the court to say what the law is, and protect private rights; otherwise the Constitution may be disregarded, and power may be exercised by the Legislature in a case where, under the Constitution, it is without power to act at all, and those whose rights are thus destroyed will be left without remedy.' ''

Appellee and the trial court place great reliance upon the decision in Griffin v. Powell, 143 Ky. 276, 136 S. W. 626, wherein this Court held that the decision of the Legislature as to what class any particular municipality should be assigned is final and cannot be re-examined by the courts. That case arose under section 156 of the Constitution and is distinguishable from the present case under the wording of that section of the Constitution. It was thus distinguished in Scott v. McCreary, supra. Section 156, in so far as applicable, reads as follows:

"The general assembly shall assign the cities and towns of the Commonwealth to the classes to which they respectively belong, and change assignments made as the population of said cities and towns may increase or decrease, and in the absence of other satisfactory information as to their population, shall be governed by the last preceding federal census in so doing; but no city or town shall be transferred from one class to another, except in pursuance of a law previously enacted and providing therefor."

Plainly, under this section a city might by population belong in one class or another different from the one to which it was assigned and yet the classification could not be changed "except in pursuance of a law previously enacted and providing therefor." In the face of this constitutional provision, this Court held that the matter was one wholly within the discretion of the Legislature. No limitation exists, under Section 156, as to the facts upon which the Legislature may act except that, in the absence of other satisfactory information, the Legislature shall be governed by the last preceding Federal census. Manifestly, satisfactory information meant satisfactory to the Legislature, and not to the courts, but, even here, it was recognized that the

Legislature was required to act upon evidence of some kind, and such action, if taken upon no evidence at all, or, what amounts to the same thing, evidence showing the contrary to the legislative finding, would undoubtedly be disregarded by the courts. Griffin v. Powell, supra, does not deny this rule.

We conclude that in the examination of the case before us, these principles must be applied: (1) It was the duty of the Legislature in the creation of a new district to have due regard to territory, business and population; and (2) it is our duty to examine the facts in order to determine whether or not there was any evidence to support the legislative conclusion that a new district was necessary. The case is before us on a demurrer to the petition, and the facts therein well pleaded are therefore to be accepted by us as true.

It is alleged that, in the creation of the new district, the Legislature had no regard for the territory, business or population. It is insisted that this is a mere conclusion of the pleader and is not therefore to be considered as admitted on demurrer. There is a close analogy between it and the rule in regard to pleading want of probable cause in a suit for malicious prosecution. On this score, it was said, in Benson v. Bacon, 99 Ind. 156, as quoted by this Court in Bannon v. McDonald, 270 Ky. 364, 109 S. W. (2d) 798, 799:

> "The want of probable cause is a fact, and it is always sufficient to state the facts without pleading the evidence which proves the fact. Scotten v. Longfellow, 40 Ind. 23; 2 Works Pr. 646; 2 Chitty Pl. 616; Adams v. Lisher, 3 Blackf. [Ind.] 241 (25 Am. Dec. 102). It would be impracticable, and indeed almost impossible, for a plaintiff to specifically set forth the facts constituting a want of probable cause, for, owing to the negative form of the fact, it would be necessary for him to anticipate and answer every conceivable state of facts that might constitute probable cause."

But, entirely aside from this, the petition specifically sets out facts which, if true, demonstrate that any consideration of territory, business or population must have indicated just the reverse of the alleged legislative finding.

It is set out in the petition that the proposed new district is located on both sides of Green and Barren

Rivers, which traverse its territory from end to end, the long way. There are no bridges over these rivers, and in times of high water it is impossible to cross them. Much of the business of the districts is in the nature of applications for injunctions and similar matters requiring attorneys, litigants and witnesses to travel from their homes to the home of the judge or the county seat where he may be holding court at the time. In many cases the distance to be traversed would be as much as 100 miles, and, in case of high waters, likely a much greater distance, whereas, under the old districting, the judges of each of the Sixth, Seventh and Eighth Districts are easily accessible. The old Sixth District contains 1,508 square miles, the old Seventh 1,698 square miles, and the old Eighth 1,649 square miles. Under the new arrangement, the Sixth and Eighth Districts will each contain but 924 square miles, the Seventh, 1,226 square miles, and the new district will contain 1,781 square miles. Thus, the new district would be larger than any of the old districts and would be almost twice as large as the new Sixth District or the new Eighth District. Certainly, under these facts, it cannot be concluded that the Legislature considered the territory involved as a material factor.

It is next alleged that the business in all of the circuit courts included in the four districts has been annually and consistently diminished and that the judges of the old districts are not required to work as much as one-half of the time. It is alleged that the dockets are not crowded, whether criminal, civil or equity, and the judges have abundant time in which to try every matter presented to them and that they do so promptly. It is alleged that there has been no increase in population or in litigation in recent years, and it is quite possible for the judges of said courts to keep up with the docket and they have always done so. It is pointed out in briefs that actual terms of court are held in the Sixth District forty weeks in each year, in the Seventh District forty-two weeks, and in the Eighth District thirty-six weeks, or a total of 118 weeks. Under the new Act, court would be held in the Sixth District for thirty weeks, in the Seventh District for thirty-two weeks, in the Eighth District for thirty-six weeks, and in the new Thirty-eighth District thirty-three weeks, or a total of 131 weeks. In other words, there would be an increase in terms of court amounting to only thirteen weeks. Op-

posed to this, we have the allegation that the courts of the present districts are not required to sit longer than one-half of the time now allotted to those districts and that the business has steadily diminished in recent years. Clearly, if these facts are true, there is no evidence tending to show a need, from a business standpoint, of an additional district.

Finally, it is alleged that the proposed new district would have a population of 86,348, which is nearly double the population assigned to the new Seventh District or the new Eighth District, and is approximately 25,000 more than the new Sixth District. There has been no increase in population of the districts in recent years. From the standpoint of population, it would appear that no possible basis for a change existed.

It may be conceded, as urged by appellee, that the General Assembly heard evidence before adopting the bill, but, surely, if the evidence heard included the admitted facts before us, it could not reasonably be said that that body acted with "due regard to territory, business and population." It is upon the facts, and not upon the findings of the General Assembly, that the constitutionality of the Act must be determined. Scott v. McCreary, supra.

Cases relied on by appellee to the effect that the courts will not go behind an enrolled bill to determine whether the Legislature has complied with constitutional requirements are not in point. They relate to the administration by the Legislature of its own affairs. The statement which he quotes from Butler v. Stephens, 119 Ky. 616, 84 S. W. 745, 27 Ky. Law Rep. 241, while supporting his view, was clearly a dictum and is at variance with the subsequent holding in Scott v. McCreary, supra, and in Nolan v. Jones, supra, which followed and approved Scott v. McCreary, supra. It cannot be doubted but that the General Assembly is vested with a discretion in the matter of creating judicial districts both as to when they are necessary and what counties shall compose them, but that discretion can only be exercised within the walls of a due regard to territory, business and population. Where, as here, there is no evidence supporting the legislative finding, and the admitted facts demonstrate both a lack of necessity for the district, whether from the standpoint of territory, business or population, and a disregard for the consti-

tutional requirements in creating it, we are compelled to choose between giving effect to the Act or giving effect to the Constitution which we are sworn to uphold. There can be no doubt of our duty. The demurrer to the petition should have been overruled.

Judgment reversed for proceedings consistent herewith.

Whole court sitting.