# Willis v. Jonson et al.

June 23, 1939.

Richard P. Dietzman, Special Judge.

E. J. Felts, A. H. Clark, S. C. Eaves and Trimble & Trimble for appellant.

Hubert Meredith, Attorney General, John B. Rodes and A. D. Kirk for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

At its 1938 session, the legislature created a new Judicial District, designated as the Thirty-eighth, out of the Sixth, Seventh and Eighth Districts. Acts 1938, c. 13. The judge of the Seventh District challenged the validity of the act. We reversed a judgment sustaining a demurrer to his petition and dismissing it. Willis v. Jonson, 275 Ky. 538, 121 S. W. (2d) 904. The Honorable Clarence Bartlett, having been elected judge of the new district to succeed the appointed judge, was substituted as the real party in interest, with Judge Jonson remaining as a nominal defendant. Evidence was heard and the case resubmitted to the Honorable Richard Priest Dietzman, special judge. He held the

act to be constitutional and dismissed the petition, from which judgment this appeal is prosecuted.

On the former appeal we held that in establishing a new judicial district, it was the constitutional duty of the legislature to have due regard for the factors of territory, business and population, and that in passing upon the constitutionality of the act for the alleged failure to do so, it was the duty of the courts to determine whether there was any evidence of the existence of facts in relation thereto supporting the legislative conclusion that the new district was necessary, and that due regard had been given the three factors. We were of opinion that if the facts pleaded should be sustained by proof, the legislature was without constitutional power to create the new district.

At the threshold we have the contention of the appellant that the first opinion is the law of the case and that this court has determined all the issues. He maintains that we dealt with the facts of territory and population, of which the court must and did take judicial notice, and that we expressly held that the legislature had manifestly failed to give due regard to each of those material factors. By way of emphasis, the appellant points out that the parties stipulated that the allegations of the petition concerning area and population are correct. The analogy is suggested that as the loss of one or of two legs of a three-legged stool is fatal to its stability, so the failure of the legislature to have regard for any one of the three requisite conditions is fatal to the constitutionality of the act. The appellant misconceives the opinion. The recitation was of the allegations of the petition and not of facts of which the court had judicial knowledge. In respect to the territory, it will be observed from the recitation that there were also allegations as to natural barriers of rivers, distances necessary to travel, and inaccessibility. We held that the pleadings stated a cause of action and remanded the case for consistent proceedings. Had the conclusion been as appellant contends, the mandate of this court would have directed the judgment to be entered without further consideration by the trial court. The law of the case therein declared was only the sufficiency of the pleading and the necessity and character of proof.

We are of opinion that the constitutional require-

ment is that the legislature should look to the conditions as a whole and have due regard for the factors of territory, business and population as a unit. And in reviewing the legislature's discretionary action upon the factual conditions, the courts may not tear them apart and treat each separately—as in the fable of the bundle of sticks.

We look to the evidence tending to sustain the ground of a lack of proper regard for the factual conditions, and the evidence tending to support the validity of the act.

Territory. The evidence tending to show inaccessibility and inconvenience by reason of the rivers and floods is negligible. On the contrary, it demonstrates that under the new arrangement the topography and the distances to be traveled by the judge, residing in any county, to reach his courts, and the attorneys and litigants residing in other parts of the district to reach the judge wherever he might be at the time, are not materially different than in the former arrangement, and that it is just as easy and convenient. Those elements of accessibility and convenience must have been the primary thought of the framers of the constitution in providing that due regard should be given the territory affected, for manifestly the area alone is of little materiality. Thus, the constitution authorizes a court for one county with several judges where the population is as specified. The area of each of the original three districts, after taking away the counties for the new district, and the new district as well, described in the opinion of the former appeal, is not disproportionate from other existing districts, some of which are much larger and some of which are much smaller in area.

Business. The appellant relies upon comparative statistics which tend to prove that the business of the constituent courts of each of the three original districts was but little more than it had been for some years, and was no greater than in some of the other districts of the state. The appellees introduced evidence of what they term "active business" as distinguished from "numerical business", and which establishes, as found by the chancellor, that there was a crowded condition of the equity docket and congestion of business in the Eighth District, particularly in the Warren Circuit Court, and in a less degree in the Allen Circuit Court.

This congestion has arisen although the judge of that district has worked expeditiously for six days and four nights each week for fifty-two weeks of the year. Indeed, the chancellor expressed the view that the condition was such in Warren County that but for the constitutional limitations as to population of the city of Bowling Green the legislature would have been warranted in creating a separate court for that county alone.

The judge of the Sixth District testified that he could comfortably take care of its business, but for some time there has been an agitation to have Daviess County established as a separate judicial district because of the volume of business there. It is apparent, as the chancellor found, that neither that district nor the Ninth or Tenth Districts, to which they are also contiguous, could well have borne the added business of Edmonson and Butler Counties, necessary to be taken from the Eighth District in order to afford relief there. Likewise the addition of either Allen or Butler Counties to the old Seventh District would have resulted in great disproportion there. There is no evidence of any substantial congestion of business in the former Seventh District, and the re-arrangement has resulted in lessening its business. But the legislature was dealing with the problem of expediting judicial business and must treat the situation as a whole in solving it. The legislature deemed it desirable to make Muhlenberg County a part of the new district in order to equalize more nearly the business among the four districts.

Judge Dietzman well analyzed the conditions and the problem with which the legislature was confronted, and reached the opinion that the new arrangement was justified in so far as the factor of business was concerned (which is unquestionably the most important) and worked no inconvenience in the matter of travel or the accessibility of the courts to the people. Even so, he properly realized that it was not necessary that such justification should have been found by the court as it was a matter resting in the discretion of the legislature upon the factual conditions.

Population. The constitution establishes as the basis for action by the legislature the "last enumeration". Since there is no local provision for taking a census of the state or any of its subdivisions, the reference is to

the last enumeration made by the federal government. Butler v. Stephens, 119 Ky. 616, 621, 84 S. W. 745, 27 Ky. Law Rep. 241. It is provided by both Sections 128 and 132 of the Constitution that in dividing the state into districts originally, and in establishing additional districts later, the number of districts, excluding those in counties having a population of 150,000 (where courts of continuous session may be established), shall not exceed one district for each 60,000 of the population of the entire state. Upon this basis, with the creation of the Thirty-eighth District, the average population of each judicial district is 59,522 people. As re-arranged by this act, the Sixth District has a population of 60,998, the Seventh of 46,731, the Eighth of 48,856, and the Thirty-eighth of 86,348. The constitution does not arbitrarily require a minimum of 60,000 in each district, and the present division of the state does not accord with such view. Thus, the Twenty-sixth District has a population of 103,304, while the Twenty-fourth District has only 31,-552. It is to be observed that a single county may be permitted to constitute a district if it has 40,000 inhabitants and contains a city of 20,000 people; and also that such a district may have an additional judge for each additional 50,000 population when its population reaches 75,000. It is also observed that in each county having a population of 150,000 or over, it shall be entitled to four judges and an additional one for each increase of 40,000 population. Although doubtless it was intended that 60,000 should be the approximate population of each district outside the counties containing the larger cities, the validity of an act establishing a district of more or less population is not affected by such constitutional provisions, the policy involved being a question of exclusive legislative cognizance. Butler v. Stephens, supra; Brown v. Moss, 126 Ky. 833, 105 S. W. 139, 31 R. 1288.

While it may be assumed that the legislature had knowledge of the facts, yet it is proven that for the purpose of considering the bill the Senate had resolved itself into a committee of the whole and heard a number of proponents of the bill, including several of the witnesses who testified in this case. The record shows there was only one citizen to appear in opposition. Petitions for or against the bill were also filed with the legislature. A preamble of the Act recites as the motivating causes for creating the district the increase in

the equity business and the population and the development of resources in the Sixth, Seventh and Eighth districts.

As we held in the first opinion, the authority of the courts has been to determine whether or not there was any evidence to support the legislative conclusion that the new district was necessary or to show that that body had due regard for the factual conditions. That decision finds support in Clark, Director of Motor Vehicles, v. Paul Gray, Inc., 59 S. Ct. 744, 750, 83 L. Ed. ——, wherein it is said:

"The determination of the legislature is presumed to be supported by facts known to it, unless facts judicially known or proved preclude that possibility. Standard Oil Co. v. Marysville, 279 U. S. 582, 584, 49 S. Ct. 430, 73 L. Ed. 856; Borden's Farm Products Co. v. Ten Eyck, 297 U. S. 251, 263, 56 S. Ct. 453, 456, 80 L. Ed. 669; Id., D. C., 11 F. Supp. 599, 600; South Carolina State Highway Department v. Barnwell Bros., 303 U. S. 177, 191, 192, 58 S. Ct. 510, 517, 82 L. Ed. 734; United States v. Carolene Products Co., 304 U. S. 144, 153, 154, 58 S. Ct. 778, 784, 82 L. Ed. 1234. Hence, in passing on the validity of the present classification, it is not the province of a court to hear and examine evidence for the purpose of deciding again a question which the legislature has already decided. Its function is only to determine whether it is possible to say that the legislative decision is without rational basis. This is equally the case whether the classification, which is one which the legislature was competent to make, is applied to vehicles using the state highways in interstate commerce. South Carolina State Highway Department v. Barnwell Bros., supra, 303 U. S. page 187 et seq., 58 S. Ct. page 514, 82 L. Ed. 734. The legislature must be assumed to have acted on information available to courts, and where, as here, the evidence, like that discussed in Morf v. Bingaman, supra [298 U. S. 407, 56 S. Ct. 756, 80 L. Ed. 1245], shows that it is at least a debatable question whether the traffic in caravans involves special wear and tear of the highways and increased traffic hazards requiring special police control, decision is for the legislature and not the courts."

"Due regard" we interpret as meaning the consideration in a degree appropriate to the demands of the particular case and the importance of the legislation of the three factors of territory, business and population in and of the districts affected.

It cannot be well said that the evidence which we have so closely epitomized shows that there existed no factual basis for the conclusion of the legislature, in the exercise of a wide discretion, that there was need for a new judicial district; nor for a judicial conclusion that that coordinate department of the government did not have due regard for the three things which the constitution says shall control it.

Wherefore the judgment is affirmed.

Whole court sitting except Judge Perry.