# Runyon, Commonwealth's Attorney, et al.
## v. Smith et al.

June 25, 1948.

Francis M. Burke, O. T. Hinton, J. P. Hobson, Jr., Edward R. Hays, L. D. May, Astor Hogg and G. E. Reams for appellants.

R. L. Maddox, amicus curiae in support of appellants.

Cleon K. Calvert for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

This action challenges the constitutionality of an Act of the last biennial session of the General Assembly,

which had to do with the dismantling of three existing judicial districts, and reorganizing them into four judicial districts to be: (a) The 26th, composed of Harlan County alone, (b) the 33rd, composed of the counties of Letcher and Perry, (c) the 35th, composed of the county of Pike alone, and (d) the newly created 41st district to be composed of the counties of Bell and Leslie, one taken from the 26th district and the other from the 33rd.

At a special term of the Pike Circuit Court presided over by Special Judge, Honorable Will H. Fulton, the Act was adjudged to be invalid because violative of Section 138 of the Constitution. However, it might be added here that there is the following unchallenged statement in appellants' brief:

"The learned Special Judge was in sympathy with the purpose to be served by the challenged Act and desired to sustain its constitutional validity, but did not feel that as trial Judge he could do so in view of the interpretation placed upon Section 138 of our Constitution by this Court in the cases of Scott v. McCreary, 148 Ky. 791, 147 S. W. 903 and Nolan v. Jones, 215 Ky. 238, 284 S. W. 1054, * * *."

From that judgment this appeal is prosecuted.

The attack upon the constitutionality of the Act is centered about and based upon the fact that it undertakes to create Pike and Harlan Counties into separate one-county judicial districts. The admitted allegations, proof and stipulations show that there is no city or town in either Pike or Harlan County which contains a population of 20,000 or more within its corporate limits; that in each of the counties the business is so extensive as to require a full time Judge in each county; that the population of Pike County, based on the 1940 Federal census, is 71,122 and Harlan County 75,275; that the area of Pike County is 779 square miles; that the area of Harlan County is 478 square miles; and that the business in each of the districts, including the newly created one, is sufficient to require all the time one Judge can give to court work.

Appellants take the position that the exigencies of the situation demanded action upon the part of the Legislature to meet the judicial necessities in this territory.

Appellees take the view that under Section 138 of the Constitution a single county cannot be made into a separate judicial district, regardless of the exigencies of the situation, unless it has a city with 20,000 population. Consequently, if there is an obstacle in the way of appellants it is Section 138 of the Constitution, which reads:

"Certain counties may constitute separate district; additional judges; practice. Each county having a city of twenty thousand inhabitants, and a population, including said city, of forty thousand or more, may constitute a district, and when its population reaches seventy-five thousand, the General Assembly may provide that it shall have an additional Judge, and such district may have a Judge for each additional fifty thousand population above one hundred thousand. And in such counties the General Assembly shall, by proper laws, direct in what manner the court shall be held and the business therein conducted."

Appellants insist that it is not the provisions of Section 138 which present the difficulty but the interpretation of that section heretofore made in the Scott and Nolan cases above. There appears to be no attack made on the Act with reference to any of the districts except Pike and Harlan Counties. It is insisted, however, that the entire Act is invalid since it centers in the creation of Pike and Harlan Counties into separate single county judicial districts.

Appellees rest their entire case on the provisions of Section 138 above, and the interpretation thereof as found in the Scott and Nolan cases. A discussion of these cases will appear later.

We now approach the consideration of this Act with reference to Section 138 of the Constitution. In so doing we must marshal the rules of construction applicable to constitutional interpretation. Immediate difficulty would ensue were we to lift Section 138 out of the Constitution and consider it alone. That no one provision of the Constitution is to be separated from all others and considered alone is an established rule of constitutional construction. All the provisions bearing upon a particular subject are to be brought into view and to be so interpreted as to effectuate the purposes of all the provisions.

11 Am. Jur., Constitutional Law, Section 53; 94 A. L. R. 110. Sections 125 to 138, inclusive, of the Constitution relate to circuit courts. Under the rule of construction above, it then becomes immediately apparent that the road to Section 138 must necessarily lead through Section 125 and following. Thus, the various provisions of the Constitution relating to the creation of districts should be construed together and if possible they should be harmonized. We are likewise bound by the rule that every constitutional provision should be construed, where possible, to give effect to every other constitutional provision. People v. Case, 220 Mich. 379, 190 N. W. 289, 27 A. L. R. 690; Cooley's Constitutional Limitations, Vol. 1, page 129.

In following the rules above, we regard only the instrument itself and the words employed therein in seeking to arrive at the meaning. However, there are other important aids to be invoked in helping to clear up any doubts or explain any apparent ambiguities, chief of which is looking at the intent of the framers. In arriving at the proper construction of any specific section we must consider the reason for the provision and the purpose of a convention in adopting it. Rhea v. Newman, 153 Ky. 604, 156 S. W. 154, 44 L. R. A., N. S., 989. And no part of the Constitution should be construed so as to defeat its substantial purpose or the reasonable intent in adopting it. Gaines v. O'Connell, 305 Ky. 397, 204 S. W. 2d 425. Therefore, we may resort to the Constitutional Debates as an aid in placing the proper construction upon a specific section.

With the above rules in mind, we shall proceed to a consideration of Section 138. Since the road leading to it lies through the preceding sections, we shall first examine those which have to do with the creation of districts and the conditions and limitations placed thereon.

Section 128, dealing with the number and creation of districts, directs what shall be done by the General Assembly at its first session after the adoption of the Constitution. The General Assembly is directed to divide the State into a sufficient number of judicial districts to carry into effect the provisions of the Constitution concerning circuit courts, having due regard to *territory, business,* and *population.* There are two man-

datory provisions in this section: (1) In making such apportionment no county shall be divided, and (2) The number of districts, excluding those in counties having a population of 150,000, shall not exceed one district for each 60,000 of the population of the entire State. There can be no guess here as to the basis of the apportionment. The thing to be kept in mind within the mandatory limitations is due regard to territory, business, and population. This was recognized in Willis v. Jonson, 275 Ky. 538, 121 S. W. 2d 904, 907, when we said:

"(1) It was the duty of the Legislature in the creation of a new district to have due regard to territory, business and population; and (2) it is our duty to examine the facts in order to determine whether or not there was any evidence to support the legislative conclusion that a new district was necessary."

This was again recognized in Willis v. Jonson et al., 279 Ky. 416, 130 S. W. 2d 828, 830, when we said:

"We are of opinion that the constitutional requirement is that the legislature should look to the conditions as a whole and have due regard for the factors of territory, business and population as a unit. And in reviewing the legislature's discretionary action upon the factual conditions, the courts may not tear them apart and treat each separately—as in the fable of the bundle of sticks."

In this same case we undertook to define due regard, and said:

" 'Due regard' we interpret as meaning the consideration in a degree appropriate to the demands of the particular case and the importance of the legislation of the three factors of territory, business and population in and of the districts affected."

Section 132, dealing with the question of the creation of new districts, directs when the General Assembly may establish additional districts. This may be done when *deemed necessary* but subject to the mandatory provision, as set out in Section 128, that the whole number of districts, exclusive of counties having a population of 150,000, shall not exceed at any time one for every 60,000 of population of the State according to the last

enumeration. Judge Winn in his dissent in the Scott case very strikingly stated (148 Ky. 791, 147 S. W. 908) :

"In the enactment of so enduring, dignified, and formal a document as that of a Constitution, the basic law of a self-governing people, it is not to be assumed that any words written into the instrument were there written lightly, or without some definite and precise purpose. The words in section 128, 'having due regard to territory, business and population,' and the words in section 132, 'when deemed necessary,' which latter words of necessity refer back to the standard or measure to be regarded by the Legislature in the creation of new districts, must be given the formal weight which all words in a Constitution are entitled to receive. The standard erected and declared in these words is the standard which the Legislature must needs follow, and is the standard which must govern us, unless there be within the Constitution itself some other declared standard limiting or narrowing the intent of these words."

Thus far there is no obstacle presented to the present Act. We have a deemed necessity, obviously based upon the same due regard to territory, business, and population.

We next come to Section 137, which is rather enlightening. This section provides: "Each county having a population of 150,000 or over shall constitute a district, which shall be entitled to four Judges * * *." There are no conditions or limitations here other than the qualification as to population of a county. Let us reason a bit as to this. It is stated in brief of counsel that actually while the 1940 Federal census shows less, there are approximately 100,000 people in each of the counties of Pike and Harlan. It is suggested that because of the topography of these counties it is easily possible to have 150,000 population in each of the counties and yet no incorporated city within either of 20,000 population. Suppose for a moment that Pike County has 150,000 population and no city of 20,000 population. Could it then be made a one county district? The answer is obvious. Let us reason a bit further. Suppose Pike County has a population of 149,999 and no city of 20,000 population. Under the theory of appellees we must necessarily have a judicial district consisting of more

than one county. If, by some inducement, one of the residents of another of the counties within that particular judicial district could be persuaded to move into Pike County, thereby making the necessary 150,000, then under 137 Pike County would be entitled to be made a judicial district with 4 Judges, whereas before the reshuffling and relocating this one person it was required to be joined to at least one other county and limited to one Judge for the whole. To adopt such theory would most certainly be a flaccid interpretation of these provisions. It would mean they, taken collectively, are a pot pourri of absurd and ridiculous provisions, entirely lacking in consistency.

And now we approach Section 138, the section relied upon by appellees. This section provides that each county having a city of 20,000 inhabitants and a total population of 40,000 or more *may* constitute a district. In the majority opinion in Scott v. McCreary above, dealing with this section, the position is taken that the 40,000 total and a city of 20,000 is a condition precedent to becoming a one county district, and that both requisites of total county population of 40,000 and city population of 20,000 must be present. Appellants take the position that the opinion is basically wrong both in theory and in practical application.

There must be some significance in the fact that the framers of the Constitution in Sections 128 and 137 used the word "shall" and in 138 used the word "may." We, therefore, appeal to that rule of constitutional construction which enjoins us to seek light from the intention of the framers. While the Constitutional Debates do not always indicate the actual intent, in many instances they are of such significance as to be almost conclusive of the intent. In times past it has been charged that the Debates are normally used only when they support a view already determined upon by the court and are dismissed as of little weight when opposed to the desired view. This criticism is without foundation. Such rule of construction is, and should only be employed as a means of reaching a conclusion, and not merely to support a conclusion already arrived at. It would be easy to beat a retreat and say that the interpretation of 138 as made in the Scott v. McCreary case, now having been long settled by judicial decision, establishes a reasonable

inference that that interpretation was the intent of the framers. It is an accepted doctrine, however, that what the Constitution meant when adopted it continues to mean.

As an aid we have made a rather extensive reading of the Debates having to do with the question of judicial districts. In Volume 3, page 3437 of the Debates, we find the following:

"There were two prominent ideas in the minds of the people that brought this Convention together—speedier justice from the Courts and a decrease in expenditure in litigation. The fourth section of that report gives to the Legislature at its first session, the power, with due regard to business, territory and population, to divide the Commonwealth into thirty Judicial districts. The tenth section of the same report makes it the duty of the General Assembly, if it deems necessary, at any time to establish additional districts, but limits the whole number thereof to not exceeding one for every forty thousand population of the State according to the last enumeration."

Had the report as adopted remained, there likely would have been no Section 138. But, difficulty arose a little later when an amendment was offered substituting 60,000 for 40,000. On page 3550, dealing with the question of this amendment, it was said:

"That idea was that no district, outside of a county having a population of one hundred and fifty thousand, could be made with a population of less than sixty thousand."

This change apparently eliminated such counties as Fayette, whose distinguished delegate, Mr. C. J. Bronston, was quite prominent in the Debates on this question. He took the position that the amendment was singling out population and basing the districting entirely upon population alone. On page 3514 of the Debates, he said:

"Is there any State in the Union that has undertaken to divide itself into Judicial Districts based upon population alone, and why fix that rule? It might be possible in your own county, sir, that you would need additional Courts, and yet you never could get the relief,

and you fix it simply upon population, and say that 60,000 shall constitute a district.''

And so on and on went the Debates on this question. A careful reading of these Debates throughout convinces one that the Convention was quite positive and definite that 60,000 should be the basis of apportionment; that no county should be divided; and that the State should be divided into districts based upon population, area, and business. It finally passed 138, more in the form of an appendix or supplement to the main body of the provisions, in order to appease those who took the position that 40,000 rather than 60,000 should have been the basis of apportionment. The reasoning in the majority opinion in the Scott case would be to the effect that 138 is a limitation. This is not a tenable position. If it is a limitation it must necessarily be a limitation on the powers already granted. It is obvious there is no limitation here on what had already been done. On the contrary, it appears more to be an expansion. So much so as to say that regardless of area and business, and even though a county has a population of less than the basic 60,000, yet if it has a city of 20,000 and only a total population of 40,000, it may be constituted a district. This is a permission and not a limitation.

No intolerable disharmony exists between the decision in the Scott case and the final conclusion reached herein. We have two entirely different cases. In the Scott case Franklin County had a total population of only 21,135 and its metropolis had a population of only 10,465. There was an entire absence of the requisites of population both as to the county and as to a city within the county.

In the instant case we are dealing with two counties, each of which has a population far in excess of the 60,000 basis of apportionment. We have one county with an area of 779 square miles and the other with an area of 478 square miles. There is business sufficient to require the services of a full time Judge in each of the counties. In fact the docket in each of the counties is so congested that with the pre-existing setup there is such delay as to deny to persons the constitutional right as provided in section 14 of the Constitution. There is no reason then to become militantly impatient with the

decision in the Scott case, other than to say that we do not agree with the reasoning therein. We think the interpretation as placed there on 138 is one that did not occur to the framers of the Constitution and is wholly inconsistent with the previous sections dealing with judicial districting. On the other hand, we quite frankly say that we do agree with and adopt the reasoning as found in the dissenting opinion.

There is no necessity of discussing the **Nolan v. Jones** case since it was fulcrumed squarely on Scott v. McCreary.

By giving due regard to population, territory, and business, and based on the ground of necessity, the redistricting, as provided in the Act, was entirely justified and is not violative of Section 138 of the Constitution. Other arguments of varying reasonableness might be advanced to support this view, but we think the above will suffice.

Wherefore, the judgment is reversed with directions to enter judgment consistent herewith.