**Russell Gene HARROD, Petitioner,**

v.

**Henry MEIGS, II, Respondent, and Judith McDowell Harrod, Intervening Respondent.**

Court of Appeals of Kentucky.

Dec. 2, 1960.

Darnell & Johnson (William E. Johnson), Frankfort, for petitioner.

R. Vincent Goodlett, Ben B. Fowler, Frankfort, for respondent.

William A. Young, Frankfort, for intervening respondent.

CULLEN, Commissioner.

This is an original action in this Court seeking an order of prohibition. The basis for the relief sought is the alleged unconstitutionality of Chapter 170 of the Acts of the 1960 General Assembly. The Act provides that the 14th Judicial District shall be composed of Bourbon, Scott and Woodford Counties, and a new district (the 48th), consisting of Franklin County, shall be established. It further provides for the creation and appointment of a judge and commonwealth's attorney for the new district, and sets out the court terms for each county involved. In the preamble it is noted that the General Assembly has taken notice of the territory, business and population involved.

Pursuant to the directions of the Act the respondent, Henry Meigs II, was appointed Judge of the 48th Judicial District. We are now asked to prohibit him from acting as circuit judge in a divorce action which he has taken under submission over petitioner's objection.

At the outset we shall make our position clear on the propriety of entertaining the petition for an order of prohibition. Section 110 of the Kentucky Constitution invests this Court with the power

to issue writs necessary to give it a general control of inferior jurisdictions. The exercise of supervisory control over an inferior court has been limited by interpretation to "extraordinary cases, when the exigencies are so exceptional that no other remedy is adequate to prevent a miscarriage of justice." Old Blue Ribbon Distillers, Inc. v. Holbert, Judge, 276 Ky. 687, 125 S.W.2d 253, 254.

██ It is true that the extraordinary remedy of prohibition may not be invoked merely because a constitutional question is involved, if there is an adequate remedy by appeal. Chesapeake & Ohio Ry. Co. v. Murphy, 314 Ky. 309, 234 S.W.2d 969; Engle v. Miller, 303 Ky. 731, 199 S.W.2d 123. But in the instant case serious complications would attend any effort to raise the question in the court below by an appropriate action from which an appeal might be taken, because the question concerns the judgeship of the very court in which the action must be brought. Furthermore, the business of the Franklin Circuit Court, by reason of its venue of most cases involving the affairs of state government, is of great importance to the Commonwealth, and it is essential that the business proceed with expedition. The question that exists concerning the status of the court and its presiding judge is such as to impair seriously the conducting of its business, and to create doubt and uncertainty in the minds of the litigants before the court. The problem is so important that in the interests of the public as a whole it should not await for a remedy the normal processes of the pursuit of an action to judgment, followed by an appeal.

Under these special circumstances we think it is appropriate for this Court to exercise its extraordinary power under Section 110 of the Constitution.

The constitutionality of Acts creating new judicial districts has been before this Court on many occasions in the past. Each of the several sections of the Kentucky Constitution pertaining to creation of judicial districts has been examined, explored and explained. Even so, a question persists concerning the true intent and application of Section 138. In order to have a clear understanding of the question involved we must again briefly review the constitutional sections that pertain to the establishment of judicial districts, insofar as they are pertinent here.

Section 128 directs the General Assembly at its first session after the adoption of the Constitution to divide the state into judicial districts not to exceed one for each 60,000 of population of the entire State, having due regard to territory, business and population.

Section 132 permits the General Assembly to establish additional districts not to exceed one for every 60,000 of population of the State, according to the last enumeration. It will be noted that districts comprising counties of 150,000 population are excluded in both Section 128 and Section 132.

Section 137 establishes a district of each county having a population of 150,000.

Section 138 permits establishment of a district of each county having a total population of 40,000, including a city of 20,000 inhabitants.

In Scott v. McCreary, 148 Ky. 791, 147 S.W. 903, this Court construed an Act of 1912 which attempted to create a separate district of Franklin County. The Act was held unconstitutional as being repugnant to Section 138. The majority held that Section 138 was a limitation on the power of the General Assembly to create new districts; that a county must have a total of 40,000 population, including a city of 20,000, in order to be made a separate district; and that even if a county does have a total population of 40,000, including a city of 20,000, business must be taken into account in determining whether it may be established as a separate district. In 1948, Runyon v. Smith, 308 Ky. 73, 212 S.W.2d 521, was decided by this Court. An Act creating a

district in a county not meeting the population requirements of Section 138 was upheld, thereby effectually overruling Scott v. McCreary, supra [148 Ky. 791, 147 S.W. 907]. The dissenting opinion in Scott v. McCreary was adopted, and the reasoning in the dissenting opinion was agreed with.

The pertinent part of the dissenting opinion follows:

"As will be seen as a matter of first impression, the provision as to counties in the state which may have a population of as much as 150,000 individuals is not involved in this litigation, save only in so far as it may shed light upon the question here. The first provision of the Constitution to be noticed is that portion of section 128 which provides that the Legislature shall not have the power to create districts (outside of counties having a population of 150,-000) exceeding in number one district for each 60,000 of the population of the entire state. It is not complained in the case at bar that the creation of the additional district of Franklin county causes the entire number of districts to exceed one for each 60,000 of the state's population.

"If we next read all the above sections of the Constitution down to section 138, it is clear that there is no prohibition against legislation by the General Assembly erecting any single county into a separate circuit judicial district. The only prohibition as to any single county is that no county shall be divided into separate districts. Beyond this prohibition, the Legislature was left to exercise its entire freedom of will and judgment in the creation of districts, subject alone to the demand that the General Assembly should have due regard to territory, business, and population, and subject to the provision of section 132, supra, that additional circuit judicial districts might be established when deemed necessary by the General Assembly. In

other words (excluding always counties having a population of 150,000), the Legislature was given carte blanche to establish as many circuit court districts as it might deem necessary, in the exercise of a due regard to territory, business, and population, so long as it did not so far extend the exercise of this judgment as to create more districts than one for each 60,000 of the state's population. In the enactment of so enduring, dignified, and formal a document as that of a Constitution, the basic law of a self-governing people, it is not to be assumed that any words written into the instrument were there written lightly, or without some definite and precise purpose. The words in section 128, 'having due regard to territory, business and population,' and the words in section 132, 'when deemed necessary,' which latter words of necessity refer back to the standard of measure to be regarded by the Legislature in the creation of new districts, must be given the formal weight which all words in a Constitution are entitled to receive. The standard erected and declared in these words is the standard which the Legislature must needs follow, and is the standard which must govern us, unless there be within the Constitution itself some other declared standard limiting or narrowing the intent of these words. * * *.

"There is nothing in the language of the section named (138) from which, justly and fairly, can be deduced any implied purpose of the framers of the Constitution of a negation or denial of the right of the General Assembly to create into separate districts counties which have less than 40,000 population, or which have not in them cities having 20,000 population. If this provision of the Constitution stood alone, there would be much in the argument that in thus setting up a standard the Constitution makers had meant to make it, not only a permissive or mandatory,

but as well an exclusive, standard; but such is not the condition presented. Section 138 of the Constitution must be considered in connection with the other sections preceding it. The other sections, as above pointed out, provide that the General Assembly, in the creation of districts, should have due regard to territory, business, and population; and that it might create new districts when deemed necessary, subject alone to the prohibition against the division of any county, and the other provision that the total number of districts should not exceed one for each 60,000 of the state's population. The spirit or intent of the Constitution makers should be gained, therefore, not from section 138 alone, but from all the provisions of the sundry sections quoted. The true meaning seems to me not difficult of ascertainment; and that intent, in so far as the present action is concerned, need not involve the ascertainment of whether the word 'may,' in section 138, is permissive or mandatory. Section 138 means neither more nor less than that a county having 40,000 of population and a city within it of 20,000 of population may or must (depending upon which should be the proper intent of that section) constitute a separate district, without the 'due regard to territory, business and population' demanded to be exercised by the General Assembly in the creation of districts generally. In other words, section 128 of the Constitution denied to the General Assembly, in the exercise, under their oaths, of this legislative, governmental function intrusted to them, the right to create new districts generally, unless the legislators should first investigate or in some manner satisfy themselves that a due regard to the territory, business, and population of the proposed new district justified the erection of such a district.

"But the Constitution, in section 138, went somewhat further. It gave to the General Assembly the right, or imposed the duty (the one way or the other as its language may be read), to constitute a district of any county of 40,000 population, with a city of the requisite size within its borders, without any regard whatever to the territory and quantity of legal business within such county. By section 128 the Legislature, in the general creation of districts, was required to have regard to territory and business. This discretionary standard was set as the guide to the General Assembly in its general creation of districts; but an entirely different and arbitrary standard was fixed as to counties having a population of 40,000, with cities within them of 20,000. In other words, the Constitution itself fixed such a standard for-counties meeting this requirement, and did not exact of the Legislature to exercise any regard to territory or business in such counties before one of them might alone constitute a district. The makers of the Constitution, practical men in the exercise of sound good sense, took it upon themselves to say that in counties of the character described in section 138 a circuit court might exist upon the natural premise that its business would of necessity justify it; but it did not take away from the General Assembly the general power and the general right to constitute any other single county, having due regard to territory, business, and population, into a separate district, so long as the total number of districts did not exceed one for each 60,000 of population. This construction of the Constitution's intent makes the whole of it upon the subject of circuit districts harmonious. It leaves to the General Assembly the right to create a district of a single county when, with due regard to its territory and business, it might deem the creation of the district proper, necessary, or beneficent to the expedition of the litigation of the people of the commonwealth.

It is not charged that the business of Franklin county does not justify the erection of it into a separate judicial district, and that the act of the General Assembly creating it was arbitrary or without regard to the territory or the business of the county. Indeed, when it is considered that the entire fiscal business of the state and its matters of public litigation are conducted through the circuit court of Franklin county it is difficult to conceive that any such position could have been sustained.

"In the discussion of this case, it has not seemed necessary for me to go into any elaborate treatment of the sundry arguments and authorities ably presented by the lawyers who have argued and briefed the case. The intent and meaning of the Constitution seems to me to be clear from the document itself. When the document makes the meaning clear, it is unnecessary to search extraneous authority for the intent. The general rule, where the constitutionality of legislation is to be ascertained by the courts, is that any reasonable doubt must be resolved in favor of the legislative action, and the act sustained. And where it is not clear that the Constitution had been invaded, the courts will rarely, if ever, interfere to arrest the operation of legislative enactments. A court must start with the fundamental principle that the statute is constitutional; and it is not permitted by any decree of ours to nullify a statute, unless it is clearly against the Constitution. Under the views I have expressed, the legislation in question, upon the record presented here, not only does not run contrary to any prohibition of the Constitution, but is in full accord with a right delegated in express terms to the General Assembly.

"* * * These same men, the Constitution makers, did provide, under section 137, that a county with a pop-

ulation of 150,000 should have four judges—an arbitrary standard, without any regard to the necessities of business in such counties. This would permit a judge for each 37,500 of population, without regard to business—a fixed and definite standard set up by these men. Wherein, then, is it unreasonable to say, or in derogation of the practicality of the minds of these men to say, that they have provided a like arbitrary, fixed, and definite standard for counties of 40,000 people, a judge to 40,000 without regard to business?

"* * * they (the Constitutional Convention) did not anywhere say that a single county should never constitute a district, unless it had a population of 40,000, inclusive of a city of 20,000 within it. What they did say was that such a county might constitute a district, without regard to its business, just as they said that a county of 150,000 should have four judges, without regard to its business. As said in the court's opinion, 'the Legislature has all power, unless restricted by the Constitution.' When, added to this general power, I find in section 128 an express grant of power to them to exercise their general legislative will in the creation of districts under the conditions imposed in that section, I am unwilling to read into section 138 a lopping-off of that power which the framers of the Constitution did not put there."

■ Again, as in Runyon v. Smith, we adopt the dissenting opinion in Scott v. McCreary, and express our agreement with its reasoning, and we do now expressly overrule the majority opinion in the Scott case.

The General Assembly in the Act here in question found that the permissive number of districts had not been exceeded and took into account the territory, business and population. The new district was established not under authority granted by Constitution

Section 138, but rather under the general grant of authority set out in Constitution Section 132. Thus, it is apparent, the Act under consideration conforms with Constitution Sections 128 through 138.

Petitioner questions the method used in determining the total number of judicial districts permitted. That question was resolved in Brown v. Moss, 126 Ky. 833, 105 S.W. 139.

█ Finally, petitioner argues that the 1960 Act constitutes local and special legislation in violation of Constitution Sections 59 and 60, in that there is a general statute, KRS 24.010, providing that in all counties constituting separate judicial districts and having a population of less than 150,000 the circuit court shall be in continuous session, whereas the 1960 Act provides for terms for the Franklin Circuit Court.

The first enumeration clause of Section 59 of the Constitution provides that the practice in courts of continuous session may by general law be made different from the practice of circuit courts held in terms. This necessarily implies the right of the legislature to designate certain courts as being courts of continuous session, which right is nowhere qualified elsewhere in the Constitution by any specific restrictions. The only reasonable conclusion that can be reached is that the framers of the Constitution meant that the question of whether the courts of any particular district should be of continuous session or of terms should be determined by the legislature upon the basis of the business needs of the district. This has always been the interpretation with respect to the number and length of terms in courts designated to have terms—the legislature has fixed the terms for each court according to the particular needs.

Since the legislature in our opinion has the right to say whether the courts of a particular district shall be of continuous session or of terms, and if of terms to say how long and how many the terms shall be, the mere fact that the legislature at one time chose to pass a general law fixing a standard of population alone as the basis for determining whether a court should be of continuous session is of no controlling significance, because the matter is one not required to be dealt with by general law, any more than is the creation of districts in the first instance, or the fixing of terms.

The Act in question, Chapter 170 of the Acts of the 1960 General Assembly, is constitutional in all respects, and respondent having been properly appointed pursuant to the direction of said Act has the right, duty and authority to act as Circuit Judge of the 48th Judicial District.

The petition is denied.

BIRD, Chief Justice (dissenting).

In Scott v. McCreary, 148 Ky. 791, 147 S.W. 903, Franklin County was denied a separate judicial district because of its failure to meet constitutional requirements pertaining to county and city populations. Franklin County does not yet meet those requirements. Scott v. McCreary states the law of the present case.

The majority opinion is bottomed on Runyon v. Smith, 308 Ky. 73, 212 S.W.2d 521, 525. In that opinion it was said of Scott v. McCreary as follows:

"No intolerable disharmony exists between the decision in the Scott case and the final conclusion reached herein. We have two entirely different cases. In the Scott case Franklin County had a total population of only 21,135 and its metropolis had a population of only 10,465. There was an entire absence of the requisites of population both as to the county and as to a city within the county."

There is still "an entire absence of the requisites" and while it is difficult to determine what Runyon v. Smith really held the foregoing language leaves the law unchanged as it relates to Franklin County.

Regardless, however, of its effect on Scott v. McCreary, the case of Runyon v. Smith constitutes a judicial amendment to the Constitution. This writer continues to believe that the right to amend is reserved to the people exclusively. Runyon v. Smith should be specifically overruled and, if the petitioner has any right to an original action in this Court, the relief sought should be granted.