Karu Gene WHITE, Petitioner,

v.

Hon. Gary D. PAYNE (Special Judge), Respondent.

and

Commonwealth of Kentucky, Real Party in Interest.

No. 2010–SC–000280–OA.

Supreme Court of Kentucky.

Aug. 26, 2010.

As Modified on Denial of Rehearing March 24, 2011.

Kevin M. McNally, Margaret O'Donnell, Frankfort, KY, Counsel for Petitioner.

Hon. Gary D. Payne, Special Judge, Lexington, KY, pro se.

Jack Conway, Attorney General, Susan Roncarti Lenz, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Muriel B. Varhely, Richmond, KY, Counsel for Real Parties in Interest.

Opinion of the Court by Justice VENTERS.

Petitioner, Karu Gene White, brings this original action pursuant to CR 76.36, CR 81, and SCR 1.020[1] seeking a writ of prohibition to prevent Respondent, Special Judge Gary D. Payne, from enforcing his December 15, 2008 order requiring White to submit to a mental retardation evaluation conducted by the Kentucky Correctional Psychiatric Center (KCPC).

White, a death row inmate, claims to be mentally retarded, and therefore ineligible for execution pursuant to *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). He alleges that Judge Payne's order, that he be assessed by KCPC, is not statutorily authorized by KRS 31.185, KRS 504.080, or this Court's precedents, and instead seeks $5,000.00 in funding to retain a private psychological expert to do a mental retardation assessment, and to more generally aide in his presentation of his mental retardation claim.

For the reasons explained below, we deny White's petition for a writ of prohibition.

*FACTUAL AND PROCEDURAL BACKGROUND*

In 1980, White was convicted in the Powell Circuit Court of three counts of capital murder and three counts of first-degree robbery. As relevant here, White was sentenced to death for each of the three murders. His convictions and sentences were affirmed by this Court in *White v. Commonwealth*, 671 S.W.2d 241 (Ky.1983). His subsequent RCr 11.42 motion was denied, and that denial was also affirmed on appeal. White then petitioned for a writ of habeas corpus in the United States District Court for the Western District of Kentucky. That federal case is being held in abeyance pending the outcome of White's present claim that his execution is precluded by the fact that he is mentally retarded.

In *Atkins*, 536 U.S. 304, 122 S.Ct. 2242, the United States Supreme Court held that the execution of a mentally retarded person violates the Eighth Amendment of the United States Constitution. Following this ruling, White filed a motion in the Powell Circuit Court "pursuant to RCr 11.42, CR 60.02, and CR 60.03"[2] to set aside his death sentences on the grounds that he is mentally retarded. The case was originally assigned to Special Judge Lewis G. Paisley.

1. "Ordinarily, proceedings under CR 76.36 involve original proceedings filed in the Court of Appeals and then reviewed by the Supreme Court." *Martin v. Administrative Office of Courts*, 107 S.W.3d 212, 214 (Ky.2003). See also SCR 1.030(3) ("Proceedings in the nature of mandamus or prohibition against a circuit judge shall originate in the Court of Appeals."). However, because this petition involves a matter affecting the imposition of the death penalty, original jurisdiction lies with

this Court. *Skaggs v. Commonwealth*, 803 S.W.2d 573, 577 (Ky.1990) ("the Court of Appeals is without authority to review any matter affecting the imposition of the death sentence.").

2. In *Bowling v. Commonwealth*, 163 S.W.3d 361, 365 (Ky.2005), we held that CR 60.02 is the appropriate vehicle for this type of claim.

Although White's intelligence quotient (IQ) has never been determined by testing, his petition described deficits in adaptive behavior that convinced Judge Paisley that there was sufficient "doubt as to whether he is mentally retarded" to warrant an evidentiary hearing. *Bowling v. Commonwealth*, 163 S.W.3d 361, 384 (Ky.2005) ("[T]o be entitled to an evidentiary hearing on a claim of entitlement to the mental retardation exemption provided by KRS 532.140(1), a defendant must produce some evidence creating a doubt as to whether he is mentally retarded."). In a subsequent order, Judge Paisley, over the Commonwealth's objection, ordered the Finance and Administration Cabinet to pay up to $5,000.00 for mental health testing by an expert of White's choosing.

Following Judge Paisley's ruling, the Commonwealth sought a writ of prohibition in this Court seeking to prevent enforcement of the order. *See Commonwealth v. Paisley*, 201 S.W.3d 34 (Ky.2006) (supplemented by *Mills v. Messer*, 268 S.W.3d 366 (Ky.2008)). Upon review, we held that Judge Paisley abused his discretion in ordering the Finance and Administration Cabinet to pay up to $5,000.00 for a private psychologist "without the requisite showing that the use of state facilities was somehow impractical" as set forth in KRS 31.185.[3] *Paisley*, 201 S.W.3d at 37.

On remand, the case was assigned to Special Judge Payne. Following a hearing, Judge Payne issued an opinion and order finding that "KCPC is capable of providing a competent mental retardation evaluation of White, pursuant to KRS 532.130." The order also provided that KCPC was to conduct the evaluation and that White was to submit to its custody for evaluation.

White brings this writ of prohibition seeking relief from Judge Payne's order that KCPC conduct the mental retardation evaluation.

### DISCUSSION

■■ "A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky.2004). It has been established that a writ of prohibition "is an 'extraordinary remedy' that Kentucky courts 'have always been cautious and conservative both in entertaining petitions for and in granting such relief.'" *Newell Enterprises, Inc. v. Bowling*, 158 S.W.3d 750, 754 (Ky.2005) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky.1961)).

In ordering the KCPC evaluation, the trial court clearly was acting within its jurisdiction. Therefore, White's only avenue for writ relief is upon a claim that in ordering the KCPC evaluation the trial court acted erroneously in a way that would cause him to suffer great and irreparable injury for which an appeal would not be an adequate remedy.

As an initial matter, we address White's claim that Judge Payne is acting erroneously because he failed to comply with this

---

**3.** KRS 31.185(1) provides that "Any defending attorney operating under the provisions of this chapter is entitled to use the same state facilities for the evaluation of evidence as are available to the attorney representing the Commonwealth. If he or she considers their use impractical, the court concerned may authorize the use of private facilities to be paid for on court order from the special account of the Finance and Administration Cabinet."

Court's mandate in *Paisley* by ordering a KCPC evaluation without first making a finding that the use of the state facilities was not impractical. As previously noted, Judge Payne issued an opinion and order finding that "KCPC is capable of providing a competent mental retardation evaluation of White, pursuant to KRS 532.130." While the order did not specifically address our mandate that the trial court make a threshold finding of whether "use of a state facility is [or is not] somehow impractical" before ruling on the issue, we construe Judge Payne's finding as the functional equivalent of a finding that the use of KCPC is not impractical, and thus a mental evaluation by the facility is not precluded by KRS 31.185(1). We accordingly conclude that Judge Payne complied with our mandate in *Paisley*, and is thus not acting erroneously upon that basis alone.

■ We also note that there has been an intervening change in the standard for expert funding since *Paisley*. The "impractical use" in *Paisley* must now be applied in conjunction with the standard advanced by *Mills v. Messer*, 268 S.W.3d 366 (Ky.2008), as follows:[4]

> a petitioner may be entitled to state funds for the procurement of expert testimony upon a showing that such witness is reasonably necessary for a full presentation of the petitioner's case.[5]

*Id.* at 367.

*Mills* was rendered prior to Judge Payne's order denying private funding, but it is unclear whether he gave proper consideration to *Mills*. Thus, upon recommencement of the circuit court proceedings, the court should, as a threshold matter, apply the *Mills* standard for an examination of whether the testimony of a mental retardation expert is reasonably necessary for a full presentation of the White's case. If so, such an expert should be appointed. If not, the KCPC evaluation should proceed pursuant to Judge Payne's existing order.

All the same, the change in the expert funding standard does not affect the remainder of our review of White's petition for a writ of prohibition,[6] which we now take up.

---

4. In *Hicks v. Commonwealth*, 670 S.W.2d 837, 838 (Ky.1984) the standard for determining whether a criminal defendant is entitled to funds for expert assistance was stated as whether such assistance is reasonably necessary. In *Stopher v. Conliffe*, 170 S.W.3d 307, 309–310 (Ky.2005) (overruled in part by *Hodge v. Coleman*, 244 S.W.3d 102 (Ky. 2008)), we held that KRS 31.185 applied only to attorneys representing an indigent defendant at trial, and that the statute does not apply to post-conviction proceedings at all. As noted, in *Paisley*, 201 S.W.3d 34, we held that it was an abuse of discretion for a trial court to order the Finance and Administration Cabinet to pay for a private psychologist without the requisite showing that the use of state facilities was somehow impractical.

5. In *Binion v. Commonwealth*, 891 S.W.2d 383 (Ky.1995) we recognized that in the situation where a defendant is asserting an insanity defense that a neutral mental health expert was insufficient to satisfy the constitutional requirement of due process, and that a personal mental health expert should be provided so as to permit that expert to conduct an appropriate examination and assist in the evaluation, preparation and presentation of the defense. We noted that "[t]he benefit sought was not only the testimony of a mental health professional, but also, the assistance of an expert to interpret the findings of the expert used by the prosecution and to aid in the presentation of cross-examination of such an expert." *Id.* at 386. *Binion*, however, was concerned with trial proceedings involving an unconvicted defendant, whereas the present case, like *Mills*, involves a post-conviction proceeding. Thus *Mills*, not *Binion*, is the applicable standard.

6. Moreover, the substance of our review will apply with equal force in the event the trial court denies expert funding under the *Mills*

■ In addition to his claim that Judge Payne failed to make a proper finding concerning "impracticality," which we have already discussed, White further contends that the trial court is acting erroneously because: (1) KRS 31.185 mandates an independent confidential defense evaluation; (2) the United States and Kentucky Constitutions mandate an independent confidential defense evaluation; and (3) KCPC is not statutorily authorized to conduct a post-conviction mental retardation evaluation.

The great injustice and irreparable injury identified by White if the KCPC evaluation is permitted to go forward is that he "will lose his state and federal constitutional rights to confidential defense communications, his right to remain silent and his right to a full and fair hearing on his claim that he is mentally retarded, constitutional rights which can never be returned to him on appeal."

■ The merits of a writ of prohibition will not be considered and the petition denied if the party requesting the writ cannot first demonstrate a minimum threshold showing of harm and lack of redressability on appeal. *The St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771, 774 (Ky.2005). Assuming, for purposes of our review, that the trial court is indeed acting erroneously under one of the bases identified by White,[7] nevertheless, we are not persuaded that White has demonstrated an irreparable injury which would result by a KCPC mental retardation evaluation, and which could not be redressed by appeal from a final determination of the case on the merits. The specific concerns identified by White relate to the infringement of constitutional rights; however, "the extraordinary remedy of prohibition may not be invoked merely because a constitutional question is involved, if there is an adequate remedy by appeal." *Harrod v. Meigs*, 340 S.W.2d 601, 603 (Ky.1960). As explained below, the constitutional concerns identified by White are redressable by appeal.

We discern no realistic threat to White's "state and federal constitutional rights to confidential defense communications" as a result of a KCPC evaluation. White does not identify with specificity the sorts of communications that may be compromised, and this argument appears to rest largely upon speculation. The anticipated procedure is that KCPC will perform an objectively neutral mental retardation evaluation to assess White's eligibility for execution. As described in the record, this will principally involve an IQ test, interviews with White, and a review of his background.

The aim of these tests, interviews, and reviews will be to assess White's IQ level for a determination of whether he is mentally retarded. It stands to reason that "confidential defense communications" will be minimally implicated. Moreover, upon proper motion by trial counsel, safeguards may be implemented by the trial court to protect any confidential defense communications as due process may require. "'Great and irreparable injury' means 'something of a ruinous nature.'" *Newell Enterprises, Inc.*, 158 S.W.3d at 754. That is not the situation here. If White is ultimately adjudged not to be mentally retarded by the trial court, and if he is able to demonstrate that the disclosure of "confidential defense communications" affected the proceedings, reversal of the trial

standard, and, upon such denial, a second writ of prohibition by White would be redundant and, therefore, frivolous.

7. Because we find no irreparable injury not redressable by appeal, we need not consider each of these claims upon the merits.

court's determination would be an obtainable appellate remedy.

Similarly, White's Fifth Amendment right to remain silent will be minimally implicated, if at all. He has been tried and convicted of the three murders that resulted in his death sentence, and so any inquiry by the mental health professionals into these crimes would not implicate the right.[8] Moreover, if, as part of the evaluation and testing, it becomes necessary for White to discuss other crimes he may have committed (which is unlikely considering this will be an IQ evaluation), the trial court may impose appropriate safeguards to prevent KCPC from divulging this information to the Commonwealth. Because this claim is speculative and the right may be protected by appropriate safeguards, we are not persuaded that this allegation entitles White to a writ of prohibition to prevent the KCPC evaluation.

Finally, White's claim that he will be permanently deprived of his right to a full and fair hearing is vague, speculative, and unpersuasive. If, ultimately, unforeseen detriments result from the KCPC evaluation, this problem will be redressable on appeal. If White's reservations concerning a KCPC evaluation come to fruition, we discern no potential problem which may not be redressed on appeal, at which time we will have the full record of the proceedings before us.

In summary, because White has not identified an irreparable injury or great injustice which would result from, the KCPC evaluation, and which would not be redressable on appeal, we are constrained to deny his petition for a writ of prohibition.

### CONCLUSION

For the foregoing reasons, White's petition for a writ of prohibition against Special Judge Payne is denied.

All sitting. All concur.

---

8. *Mitchell v. U.S.*, 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999) ("[A]s a general rule, that where there can be no further incrimination, there is no basis for the assertion of the [Fifth Amendment] privilege [against self-incrimination]. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final. *See, e.g., Reina v. United States*, 364 U.S. 507, 513, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960). If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared.")