Opinion issued May 19, 2011 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00319-CR

———————————

James Boyd Harris, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 232nd District Court 

Harris County, Texas



Trial Court Case No. 1223792

 



 

 MEMORANDUM OPINION

A jury found appellant, James Boyd Harris, guilty of
the offense of possession with intent to deliver cocaine weighing at least 400
grams by aggregate weight.[1]
 After finding true the allegations in
two enhancement paragraphs that appellant had been twice previously convicted
of felony offenses, the trial court assessed his punishment at confinement for
twenty-five years.  In two issues,
appellant contends that the evidence is legally and factually insufficient to
support his conviction.  

          We affirm the judgment as modified. 

Background

          Houston
Police Department (“HPD”) Officer C. Aranda testified that at approximately 2:30
p.m. on June 17, 2009, while on patrol with a “Differential Response Team,” he
and HPD Officer E. Pierson drove to the 2300 block of Kirk Street after
receiving several complaints about the area. 
He observed a woman approach a house in an area that he knew was a
“possible” “area of illegal activity.” 
After he and Pierson exited their patrol car, Pierson followed the woman
to the back of the house, where a door was open, and Aranda went to the front
of the house, where he saw two men open the door.  Aranda explained that one of the men, who he later
identified as appellant, “took off running.” 
Although Aranda pursued the man for approximately twenty-five to thirty
yards, he was unable to apprehend him.  When
Aranda returned to the house, he heard the other man “in the bushes or next to
[the] house,” but was unable to find him. 
Aranda then entered the house, which “smelled of urine and feces,” and
saw “lots of marijuana,” “some crack cocaine and some powdered cocaine,” three
weapons, scales, razor blades, and baggies containing white powder.  He opined that the house was “a cook house,”
where people go to “cook up their dope.” 
Aranda then spoke with Lisa Evans, the woman they had seen approaching
the house, and “Mr. Manning,” Evans’s husband and “lookout.”  Evans provided a statement in which she described
the man that Aranda had pursued, and her description matched the appearance of
appellant.  Manning also identified
appellant as the same man, who is known as “Man.”  Aranda explained that he had “no doubt” that appellant
is the person that he had seen run out of the house.  Aranda also found two cellular telephones at
the house, one belonging to a “Man” and one belonging to “E.”  Aranda explained that based on the witness
statements, he was able to identify “Man” as appellant.  

          Officer
Pierson testified that on June 17, 2009, while on patrol with Officer Aranda, after
he had seen a woman approach two houses, he exited the patrol car and followed
her to the back of the house.  The door
to the house was open, and this allowed Pierson to see two African-American
males standing at the kitchen counter.  Pierson
noted that one of the men was wearing a “muscle shirt,” had a “slim, muscular”
build, and had “extensive tattoos on [his] chest and arm,” and Pierson
identified this man as appellant.  Pierson
did not have the opportunity to see appellant’s face at the house that day
because he was initially looking at the men’s hands, and the men, in “a split second,”
noticed Pierson, turned around, and headed towards the front door.  Pierson noted that the build and height of
the man that he had seen at the house was consistent with appellant’s
appearance.  On the kitchen counter,
Pierson found everything necessary for “cooking illegal narcotics,” including
scales, razors, whisks, beakers, containers, bags with substances, white
substances, and “cookie formed” crack cocaine packaged ready to sell.  He also found marijuana, a pistol, a shotgun,
and a rifle.  Pierson detained Evans, did
a quick “sweep” of the house, and waited for Aranda to return.  Shortly after, LaShanda Cambric knocked on
the front door of the house, and, when the officers opened the door, they saw
her standing there with money in her hand, which she “very furtively stuck” in
her pants.  Pierson opined that the
quantity of cocaine along with the paraphernalia found at the house indicated a
“high-level operation,” in which the seller was not just someone “selling it on
the street[,] but somebody making it [and] putting it together to distribute to
others who are then going to sell it on the street.”  

On cross-examination, Officer Pierson
admitted that “from looking at the faces,” he could not identify anyone at the
house, and he, in his report, stated that he was “unable to positively identify”
appellant as a “suspect.”  The officers did
find at the house two cellular telephones, “one number going to E, and one
number going to Man.”  Pierson explained
that the officers, through Evans and Cambric, were able to determine that the
individual known as “Man” was appellant.  Evans’s “boyfriend,” who had “made a phone
call,” corroborated that appellant is “definitely the man known as Man,” who
“had been at the house for a long time cooking” and selling narcotics.  

Amanda Phillips, a criminalist with
the HPD crime lab, testified that she performed an analysis on the substances
found in the house.  She determined that one
substance was cocaine weighing approximately 572 grams.  

Evans testified that she went to
the house to purchase some crack cocaine when an officer arrived.  She explained that two people were inside the
house, “Man” and “E.”  Evans did not know
Man’s name, but stated that he is not appellant and appellant “wasn’t even
there.”  Evans explained that she went to
purchase “dope” from “Man,” but once the officers entered the home, the two men
who had been inside “went through the house” and did not return.  Evans, after her arrest, gave to the police
officers a statement in which she admitted that she had worked for “Man”
approximately six times, he used her to watch the back door of the house and
“direct customers . . . who are looking for dope,” and he is five feet and ten
inches tall and has many tattoos.  At
trial, however, Evans denied that she had worked for “Man,” and she explained
that she “just put what the officer told me to put” in her statement.  Evans stated that she knows appellant, he was
not at the house on the day in question, and she would not want anything bad to
happen to appellant.  

Arbrae Hutchison, appellant’s
neighbor, testified that on June 17, 2009, he was with appellant and the two
men worked around his house and yard.  He
explained that they “were together all that day.”  

Standard of Review

We review the legal sufficiency of the evidence “by
considering all of the evidence in the light most favorable to the prosecution”
to determine whether any “rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979).  Evidence is
legally insufficient when the “only proper verdict” is acquittal.  Tibbs
v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982).  Our role is that of a due process safeguard,
ensuring only the rationality of the trier of fact’s finding of the essential
elements of the offense beyond a reasonable doubt.  See Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988).  We give deference to
the responsibility of the fact finder to fairly resolve conflicts in testimony,
to weigh evidence, and to draw reasonable inferences from the facts.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  However, our duty requires us to “ensure that
the evidence presented actually supports a conclusion that the defendant
committed” the criminal offense of which she is accused.  Id. 

We now review the factual sufficiency of the evidence under the same
appellate standard of review as that for legal sufficiency.  Ervin v. State,
332 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d.).  

Sufficiency of the Evidence

In his first issue, appellant argues that the evidence is legally
insufficient to support his conviction because no rational trier of fact would
have found that he had the intent to deliver a controlled substance.  In his second issue, appellant argues that
the evidence is factually insufficient to support his conviction because it is so
weak that the verdict is clearly wrong and manifestly unjust.  

To
establish the unlawful possession of a controlled substance, the State must
show that a defendant (1) exercised care, custody, control, or management over
the controlled substance, and (2) he knew he possessed a
controlled substance.  Tex. Health & Safety Code Ann. §§ 481.002(38),
481.115
(Vernon 2010); Brown v. State,
911 S.W.2d 744, 747 (Tex. Crim. App. 1995).  To prove possession with intent to deliver,
the State must prove that the defendant (1) exercised care, custody, control,
or management over the controlled substance, (2) intended to deliver the
controlled substance to another, and (3) knew that the substance in his
possession was a controlled substance.  Id.
§ 481.002(38) (Vernon Supp. 2008), § 481.112(a); Parker v. State, 192 S.W.3d
801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  The State need
not show that a defendant exercised exclusive control over the controlled
substance, but, when a defendant does not have exclusive control, the State
must show additional affirmative links between the defendant and the
contraband.  Cedano v. State,
24 S.W.3d 406, 411 (Tex. App.—Houston [1st Dist.] 2000, no pet.).  The affirmative links must raise a reasonable
inference that the accused knew of and controlled the contraband.  Dickerson v. State,
866 S.W.2d 696, 700 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d).  Mere presence is insufficient to show that a
person possessed contraband.  Cedano,
24 S.W.3d at 411. 


Texas courts have
identified “many non-exhaustive factors” that may demonstrate a link to
contraband.  Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.]
2002, pet. ref’d). 
These factors include (1) the accused’s presence when a search is
conducted, (2) whether the narcotics were in plain view, (3) the accused’s
proximity to and the accessibility of the narcotics, (4) whether the accused
was under the influence of narcotics when arrested, (5) whether the accused
possessed other contraband or narcotics when arrested, (6) whether the accused
made incriminating statements when arrested, (7) whether the accused attempted
to flee, (8) whether the accused made furtive gestures, (9) whether there was
an odor of contraband or narcotics, (10) whether other contraband or narcotic
paraphernalia was present, (11) whether the accused owned or had the right to
possess the place where the narcotics were found, (12) whether the place in
which the narcotics were found was enclosed, (13) whether the accused was found
with a large amount of cash, and (14) whether the conduct of the accused
indicated a consciousness of guilt.  Evans v. State, 202 S.W.3d 158, 162 n.12 (Tex. Crim.
App. 2006). 
These factors constitute “a shorthand way of expressing what must be
proven to establish that [narcotics] were possessed knowingly.”  Roberson, 80 S.W.3d at 735.  The number of linking factors present is not
as important as the “logical force they create to prove” that an offense was
committed.  Id.  Other factors we have considered include: (1)
whether there were other persons present at the time of the search, (2) whether
the contraband was found in a closet that contained men’s clothing if the
defendant was male, and (3) whether the amount of contraband was large enough
to indicate the defendant knew of its existence.  Classe v. State,
840 S.W.2d 10, 12 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d);
Ex parte Stowe,
744 S.W.2d 615, 617 (Tex. App.—Houston [1st Dist.] 1987, no pet.).  Despite this list of factors, there is no set
formula necessitating a finding of an affirmative link, but rather, affirmative
links are established by the totality of the circumstances.  Sosa v. State,
845 S.W.2d 479, 483 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d).

Intent to
deliver a controlled substance may be proved by circumstantial evidence,
including evidence that an accused possessed the contraband.  Patterson
v. State, 138 S.W.3d 643, 649 (Tex. App.—Dallas 2004, no pet.); Mack v. State, 859 S.W.2d 526, 528 (Tex.
App.—Houston [1st Dist.] 1993, no pet.). 
Courts have considered several factors in determining such intent,
including the following: (1) the nature of the location at which the accused was
arrested; (2) the quantity of contraband in the accused’s possession; (3) the
manner of packaging; (4) the presence or lack thereof of drug paraphernalia
(for use or sale); (5) the accused’s possession of large amounts of cash; (6)
the accused’s status as a drug user; and (7) evidence of drug
transactions.  Moreno v. State, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th
Dist.] 2006, pet. ref’d); Gabriel
v. State, 842 S.W.2d 328,
331–32 (Tex. App.—Dallas 1992), aff’d, 900 S.W.2d 721 (Tex. Crim. App. 1995); Williams v. State, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet.
ref’d).  The number of factors present is
not as important as the logical force the factors have in establishing the
elements of the offense. 
Gilbert v. State,
874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).  An oral expression of intent is not required,
and “[i]ntent can be inferred from the acts, words, and conduct of the
accused.”  Patrick v. State,
906 S.W.2d 481, 487 (Tex. Crim. App. 1995).  Expert testimony by experienced law
enforcement officers may be used to establish an accused’s intent to
deliver.  See Mack,
859 S.W.2d at 529. 

In support of his
sufficiency challenge, appellant asserts that there were insufficient
affirmative links to connect him to the cocaine found
inside the house.  Appellant argues that
there is not sufficient evidence to establish his possession with intent to
deliver because there is “no evidence as to the nature of the location” where
he was arrested; “the evidence is just as consistent” with appellant being a
customer as a dealer; “it is unclear how the large amount of drugs present in
the house can be used to impute an intent to deliver” as to appellant, but not
to the others present; although the crack cocaine was packaged for sale, “the
phrase ‘packaged ready to sell’ connotes both a seller and a buyer”; the
presence of drug paraphernalia indicates that someone in the house was selling
drugs, but the State did not provide evidence linking appellant to any such
items; and, there is no evidence that appellant was in possession of large
amounts of cash or was a known drug user. 
Appellant argues that although the evidence may indicate that “someone
in that house was selling” narcotics, it is also consistent with someone “purchasing”
narcotics.  Appellant notes that “intent
can be inferred from the acts, words, and conduct of the accused,” but asserts
that if his “presence at the scene and flight from a house containing
[narcotics] necessarily suggests an intent to deliver the [narcotics], then
every user and buyer would be guilty of intending to deliver.”  

Viewing
all of the evidence in the light most favorable to the prosecution, the jury
was presented with the testimony of two officers who had seen appellant run
from a house filled with a large amount of narcotics and drug paraphernalia
after he saw one of the officers. 
Appellant’s appearance matched the physical description of the person who
the officers had seen run from the house, and Officers Aranda and Pierson
identified appellant as the man they saw running from the house.  Although there is no evidence as to where
appellant was ultimately arrested or appellant having been in possession of a
large sum of cash, there is evidence that he ran from a house containing
cocaine, marijuana, and drug paraphernalia used to “cook” narcotics.  Furthermore, the officers testified that the
cocaine was in “cookie” form and in individual packages, which is indicative of
being packaged to sell.  Officer Pierson
testified that the amount of cocaine recovered from the house was “an enormous
amount of cocaine,” and this was a “higher-level operation than somebody who
had just bought some cocaine.”  Furthermore,
Evans initially identified appellant to the officers as “Man,” and, although
she later testified otherwise, she admitted to the officers that she had worked
for appellant by “watching the back door of the house and directing customers .
. . who are looking for dope.” Evans’s boyfriend also identified appellant as
“Man.”  Evans and Cambric
were seen approaching the house with money in hand to purchase narcotics.  Also, the officers did not
find any drug paraphernalia that would have indicated the narcotics were for
personal use.  

Based on
the evidence in the record, a rational fact finder could have found sufficient
affirmative links establishing a connection between appellant and the cocaine
found inside the house and that appellant possessed the cocaine with intent to
deliver.  Accordingly, we hold that the
evidence is sufficient to support appellant’s conviction.  See Ervin, 331 S.W.3d at 52–56.

          We
overrule appellant’s two issues.  

Modification of the Judgment

          Though
we have overruled appellant’s issues, we must modify the trial court’s written
judgment, sua sponte, so that the written judgment conforms to the trial
court’s oral pronouncements.  See Richardson v. State, No. 01-06-00004-CR, 2007 WL 1559819
(Tex. App.—Houston [1st Dist.] May 31, 2007, pet. ref’d) (mem. op.).  We have the authority
to modify an incorrect judgment when
we have the necessary data and information to do so.  Tex.
R. App. P. 43.2(b); Bigley v. State, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); McCoy v. State, 81 S.W.3d 917, 920 (Tex. App.—Dallas
2002, pet. ref’d).  

Here, the written judgment states that
the jury assessed punishment at confinement for twenty-five years and no plea
was entered to the enhancement allegations, as the judgment reflects
“N/A.”  However, the reporter’s record reflects
that appellant pleaded “true” to two enhancement allegations, and the trial
court orally announced its finding that the enhancement allegations were
true.  

When, as here, a trial court’s oral pronouncements
concerning sentencing conflict with the recitals in the judgment, the oral
pronouncement controls.  See Taylor v.
State, 131 S.W.3d 497, 500
(Tex. Crim. App. 2004); Thompson v. State, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003); Ex Parte Madding, 70 S.W.3d 131, 135 (Tex. Crim. App.
2002); Coffey v. State,
979 S.W.2d 326, 328 (Tex. Crim. App. 1998). 
This Court properly
exercises its jurisdiction to modify a trial court’s judgment to preserve the
integrity of the record when, as here, the record provides the information
required to support modification.  See
Nolan v. State, 39 S.W.3d
697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.).  Accordingly, we modify the judgment of the
trial court to reflect that the trial court found true the allegations that
appellant had two prior felony convictions.

Conclusion

          We
affirm the judgment of the trial court as modified.

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Higley, and Brown.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]
          See Tex. Health & Safety
Code Ann. §§ 481.002(5), 481.102(3)(D), 481.112(a), (f) (Vernon 2010).